[Civ. No. 2783.    First Appellate District, Division Two.—June 2, 1919.]

LEWIS E. EDDLEMON, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Appellants.

[1] NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — DETERMINATION BY APPELLATE COURT—EFFECT OF LAW IN SIMILAR CASE.—While the determination of each case involving contributory negligence on the part of the plaintiff is dependent upon the particular set of circumstances presented by the record, the appellate court is bound to follow the law of this state as established by the supreme court in a similar case.

[2] ID.—PERSONAL INJURIES—EVIDENCE—OPPORTUNITY TO HAVE AVOIDED COLLISION.—In this action to recover damages for personal injuries suffered by plaintiff, arising out of a collision between an automobile driven by him and a train operated by the defendants, the evidence, particularly with reference to the opportunity afforded plaintiff for observation of the train, showed the plaintiff to have been guilty of contributory negligence, which should have prevented his recovery.

APPEAL from a judgment of the Superior Court of Contra Costa County. A. B. McKenzie, Judge. Reversed.

The facts are stated in the opinion of the court.

M. R. Jones for Appellants.

Theodore A. Bell and Arthur L. Shannon for Respondent.

HAVEN, J.—Plaintiff sued to recover damages for per-
sonal injuries suffered by him, arising out of a collision
between an automobile which the plaintiff was driving and a
train operated by the defendants, at a grade crossing at
Stege station in the city of Richmond. A verdict was
rendered in the sum of seven thousand dollars, which was
reduced by the judge of the trial court, upon a motion for
a new trial, to four thousand dollars. Judgment was
entered against the defendants for the reduced amount,
from which they prosecute this appeal.

The plaintiff was a police officer of the city of Richmond.
On the night of the accident, in the discharge of his duties
as such, he and another police officer of said city proceeded
by automobile to the vicinity of the station of the defendant
Southern Pacific Company at Stege, for the purpose of
examining vacant buildings and cars for detection of unde-
sirable persons. Plaintiff was driving the automobile, and
was seated on the left side thereof. On leaving the main
part of the city of Richmond, he ran along the tracks of
the Southern Pacific Company north of Stege station for
a distance of about a mile and a half to a point back of the
railroad station at Stege, where he stopped his machine, at
the south end of the station toward Oakland, in a public
street. During this trip he saw an engine, headed south
toward Oakland, switching cars on one of the tracks which
he passed. Plaintiff and his companion alighted from the
automobile, went around back of the station, and inspected
some empty cars and buildings, and then returned to their
automobile. They stopped there and chatted from two to
four minutes, and then decided to again cross the tracks
to another portion of Stege and inspect other buildings.
Plaintiff got into the driver's seat of the automobile; his
companion cranked the car; they started the machine in
low gear, and proceeded to cross the track at the grade
crossing. Neither plaintiff nor his companion went in front
of the station building to look up the track toward the
north before starting the machine. They both testified that,
before starting the automobile, they listened for any train

approaching from either direction, and heard no bell, whistle, or other indication of an approaching train. Plaintiff further stated that just about the time he reached the track he saw the engine right upon him. The automobile was struck by a switch-engine with cars attached, proceeding southerly on the inner or "house" track, at a point slightly more than thirty-two feet southeasterly from the point where the automobile started, and between seventeen and eighteen feet distant from the front or easterly line of the station. Upon the front side of the station was a small projection or bay window, extending about two feet from the side of the station. From this was a slanting roof nine or ten feet from the ground. Plaintiff's eyes, when he was sitting in the driver's seat, were approximately six feet from the ground, or three or four feet below the projection of this small slanting roof. From the point of starting the view of plaintiff to the north, from which direction the train was approaching, was interrupted by the station building so that he could see the track for a distance of only about fifteen feet northerly from the point where it would have been intersected by the southerly line of the station building if extended to the track. In proceeding from the point of departure to the point of the accident, the course of the automobile was in a southeasterly direction away from the station, so that the line of vision to the north along the track was extended more rapidly than if the automobile had proceeded along the southerly line of the station, or along a line exactly parallel thereto. When the automobile had proceeded a sufficient distance from its starting point toward the place of the accident so that the front wheels were in a line with the front of the station building, and the driver, who was seated six feet in the rear of such point, was approximately twenty-three or twenty-four feet from the point of the accident, his line of vision across the southeasterly corner of the station building would have enabled him to observe the track for a distance of approximately one hundred feet northerly of the point of the accident. The distance from the front wheels of the automobile before starting to the nearest rail of the track was thirty-two feet. The distance from the front or easterly line of the station building to the nearest track was between seventeen and eighteen feet, and the distance

from the projecting bay window to the nearest track was approximately fifteen feet. Before starting, the automobile stood approximately fifteen feet westerly or behind the front line of the station building, and also the same distance southerly of that building. Plaintiff testified that he did not see the engine until he was right on the track, "practically, say a foot or two"; that when he was sitting in the automobile, prior to starting, he could see down the track in a southerly direction toward Oakland for at least a quarter of a mile; that for a space of fifteen feet back from the track toward the station, and parallel to the station, there was an unobstructed view along the tracks in a northerly direction, toward Richmond, as far as he could see, at least a quarter of a mile; that when he first saw the locomotive it was within about sixteen feet of him; that he immediately applied the brake, but did not stop until the front wheels of his car had crossed the first rail, and the engine had struck the front of the automobile and swung it around; that his hearing and eyesight were both normal at the time of the accident; that at the time of the accident the train was running at not to exceed fifteen miles an hour, and the automobile between eight and ten miles an hour. Plaintiff and his companion further testified that the light on the switch-engine was poor and did not shine brightly at all. In that connection plaintiff stated: "As I approached the track on the night of the accident, I saw absolutely no reflection on the track or roadway ahead of me. After I passed the building going toward the railroad track I looked in the direction of Richmond just as quick as I passed. After seeing the engine and realizing that it was coming, I went about four or five feet before the car came to a standstill. The front wheels of the machine were about four feet from the rails when I first saw the engine. It was a very dark night." The latter statement as to the darkness of the night loses its importance in view of the testimony of plaintiff that he could see along the track in both directions for a distance of a quarter of a mile. It thus appears from plaintiff's testimony that as soon as the automobile had proceeded approximately fifteen feet from the point of starting, so as to enable the plaintiff to look past the station building northerly along the track, he had a space of approximately seventeen feet within which

to observe the approaching train and stop his machine. Instead of doing so, he did not see the engine until the automobile was within about four feet of the track.

Defendants moved for a nonsuit upon the ground that the evidence disclosed that the accident was caused by plaintiff's contributory negligence. This motion was denied by the trial court. Appellants contend that said motion should have been granted, and that the verdict is unsupported by the evidence for the same reason. Respondent calls attention to the fact that, under the testimony, the time elapsing between the opportunity afforded plaintiff for observation of the train and the time of the accident was but a fraction of a second. He argues that reasonable men might differ as to whether or not the accident could have been avoided by the exercise on the part of plaintiff of ordinary care and prudence, and that, therefore, the determination of that question was properly left to the jury.

The facts above set forth are remarkably similar to those involved in the case of *Griffin* v. *San Pedro etc. R. R. Co.,* 170 Cal. 772, [L. R. A. 1916A, 842, 151 Pac. 282], even as to the distances afforded to plaintiff for observation. The only essential difference between the facts of that case and this one is that in the Griffin case the accident happened at midday, while in the case at bar it occurred between 2 and 3 o'clock in the morning. As above stated, this fact is not material, for the reason that plaintiff testified that he could see the track plainly for a quarter of a mile in either direction. [1] The determination of each case involving contributory negligence on the part of plaintiff is dependent upon the particular set of circumstances presented by the record. This court is bound, however, to follow the law of this state as established by the supreme court in a similar case. In the Griffin case above referred to, the majority of the court held that under the circumstances there presented, which cannot be distinguished in any material respect from those in the instant case, the plaintiff was guilty of contributory negligence, and reversed the judgment in favor of the plaintiff for that reason. The contrary view is forcibly presented in the dissenting opinion of the learned chief justice, in which Mr. Justice Sloss concurred. The numerous decisions of the supreme court which discuss the question of plaintiff's contributory negligence as

applied to accidents at grade crossings, and which are cited by opposing parties to the case at bar, are referred to and distinguished in one or the other of the opinions in the Griffin case. The ruling in that case is approved in *Larrabee* v. *Western Pacific Ry. Co.*, 173 Cal. 743, 749, [161 Pac. 750, 752], and the case is cited as a basis for the general rule that a person about to cross a railroad is not entitled to rely upon a performance of duty by the employees of the railroad company, "so as to relieve him from the necessity of looking if he does not hear, and of stopping if he cannot see."

[2] Applying the rule announced in the prevailing opinion in the Griffin case to the facts of this case, we are compelled to hold that the facts contained in this record show the plaintiff to have been guilty of contributory negligence, which should have prevented his recovery.

The judgment is reversed.

Langdon, P. J., and Brittain, J., concurred.

A petition for a rehearing of the cause was denied by the district court of appeal on July 2, 1919, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 31, 1919.

Shaw, J., Melvin, J., Lawlor, J., Wilbur, J., and Lennon, J., concurred.