[S. F. No. 12692. In Bank.—January 30, 1930.]

JOHN STEPHENSON, Respondent, v. NORTHWESTERN PACIFIC RAILROAD COMPANY (a Corporation), Appellant.

Goodfellow, Eells & Orrick, Orrick, Palmer & Dahlquist, R. W. Palmer and Geary & Geary for Appellant.

F. de Journel, Philip Conley, Conley, Conley & Conley and W. F. Cowan for Respondent.

THE COURT.—We ordered a transfer of this cause to this court, after decision therein by the District Court of Appeal, for the reason that some of the members of this court were not in entire accord with the conclusion of the District Court of Appeal, holding that plaintiff was guilty of contributory negligence in the operation of his automobile, which collided with defendant's locomotive and train, and, therefore, not entitled to recover in damages for the injuries sustained by him in said collision. After a further

study of the evidence in the case and the decisions of the courts of this state applicable to the defense of contributory negligence, we have reached the conclusion that the opinion of the District Court of Appeal correctly disposes of all questions arising under said defense and we therefore adopt said opinion as the opinion of this court. Said opinion, written by Presiding Justice Koford and concurred in by Justices Nourse and Sturtevant, is as follows:

"Respondent recovered a verdict and judgment against appellant for $25,000 for personal injuries inflicted upon him by appellant's locomotive and train when it collided with his automobile at the Matheson street crossing in the city of Healdsburg. ▮ Appellant claims upon this appeal that the conduct of the respondent was negligent, barring his recovery despite negligence of the appellant.

"The crossing is about one-quarter ($\frac{1}{4}$) mile north of the depot. The train left the depot at 4:50 p. m., February 4, 1925, and proceeded north towards the said crossing where the collision occurred a few minutes later. The railroad track crosses Matheson street curving on a large radius, the inside of the curve being to the east. About twenty-eight feet east of the track and south of Matheson street is a large packing house extending over two hundred feet along the railroad right of way and about one hundred and twenty-five feet along Matheson street. Respondent had parked his automobile on Matheson street at the north end of this packing house near the railroad track but where the building blocked his view of the track south towards the depot. He went inside the building upon business for about five or ten minutes. Then he came out and entered his automobile alone. He said in substance: I could see the railroad track. I looked up and down it. I did not hear any train or see anything, so I started the automobile slowly, and I looked again and there was a little grade a little dip there (in the street) and I started slowly across the track in low gear at not over five or six miles per hour and just all of a sudden there was a flash that's all I saw. After looking from a point opposite the corner of the packing house I did not look any more because I had already looked. Respondent was never aware of the presence of the train until it struck him. He testified that he heard no bell, whistle or noise. The positive testimony of the witnesses

that the locomotive gave several short warning blasts of the whistle immediately following the regular crossing whistle of two long and two short blasts and that the bell was constantly ringing is deserving of mention, although the plaintiff and other witnesses testified negatively, having heard no bell or whistle. The point from which respondent last looked for a train prior to the collision was about opposite the corner of the packing house, which corner was the last obstruction to a clear view down the track in the direction from which the train came. At this point his vision down the track would be greatly increased or diminished by advancing towards the track or retreating from it a few feet. He estimated that when he last looked he could see down the track about one hundred feet. The permanent objects on the ground there show that, after passing the corner of the packing house, one could see down the track in excess of four hundred feet. During the time the last twenty or twenty-five feet was traversed by respondent just prior to the collision, the engine must have been plainly visible to him if he had looked. Had he seen the danger he could have stopped in safety because traveling in low gear at a slow rate of speed in an automobile in good condition. A train at forty miles an hour would travel not over two hundred feet, while a motorist travels twenty-five feet at five miles per hour.

"Counsel points to the curving track as an excuse for respondent's failure to see, but the curve was not sharp enough to conceal the train behind the packing house if the train was close enough to reach the automobile at the most favorable speeds found in the testimony. The engine was visible, therefore, despite the curve in the track, even assuming the train was coming at the speed of forty miles an hour. A fourteen-year-old boy was the only witness who testified to such high speed. He estimated it at thirty to forty miles per hour. None of the numerous other witnesses on this point estimated the speed of the train in excess of fourteen miles per hour.

"Counsel for respondent also assigns poor visibility as an excuse for failure to see the train, but the evidence does not show this. The collision occurred between 4:50 and 5 p. m., February 4, 1925, which was about one-half hour before sunset. It was a cloudy and stormy day but not rain-

ing at the time. No witness testified that it was dark. The plaintiff himself testified the light conditions were pretty good and that by 'pretty good' he meant 'not dark or anything.'

"The rough condition of the street surface where it approaches and crosses the railroad tracks is also assigned as an excuse. The respondent did not testify that his attention was diverted by the surface of the street, nor does the testimony indicate that the condition of the street was such as to require marked or more than ordinary attention.

"While there are conflicts in the evidence regarding other facts, such conflicts are not upon subjects which could alter the foundation upon which appellant lays its plea of contributory negligence. There seems to be no escape from the conclusion that respondent was negligent in failing to observe the approach of the train under the circumstances. The facts are not distinguishable in principle from the cases relied upon by appellant holding such conduct to be contributory negligence as a matter of law. (*Griffin* v. *San Pedro, L. A. & S. L. R. R. Co.,* 170 Cal. 772 [L. R. A. 1916A, 842, 151 Pac. 282]; *Murray* v. *Southern Pac. Co.,* 177 Cal. 1 [169 Pac. 675]; *Eddlemon* v. *Southern Pac. Co.,* 41 Cal. App. 340 [182 Pac. 811]; *Thompson* v. *Southern Pac. Co.,* 31 Cal. App. 567 [161 Pac. 21]; *Baltimore & Ohio Ry. Co.* v. *Goodman,* 275 U. S. 66 [56 A. L. R. 645, 72 L. Ed. 167, 48 Sup. Ct. Rep. 24].)

"The authorities relied upon by respondent in which contributory negligence was held to be a question for the jury show much greater precautions taken by the one injured than in the instant case. They are *Levings* v. *Pacific Electric Ry. Co.,* 178 Cal. 231 [173 Pac. 87]; *Walker* v. *Southern Pac. Co.,* 38 Cal. App. 377 [176 Pac. 175]; *McDonald* v. *Southern Pac. Co.,* 71 Cal. App. 656 [236 Pac. 172]; *Badostain* v. *Pacific Electric Ry. Co.,* 83 Cal. App. 290 [256 Pac. 576]."

The judgment is reversed.

LANGDON, J., Dissenting.—I dissent. The evidence produced by the plaintiff is: That the train was traveling at an excessive rate af speed; that when the plaintiff was within twenty-eight feet of the track he looked to the left and to the right and on the left, from whence the train

came, he could see down the track for seventy-five to one hundred feet; that he saw no train; that he listened for a bell or whistle and did not hear either; that no bell was rung nor was any whistle blown; that he then proceeded at a slow speed over the crossing, which was not paved, but was rough and contained ruts and puddles of water; that it was a dark, cloudy day and had been raining; that the plaintiff was unfamiliar with the crossing in question and had never been over it before; that he was familiar with the other main crossings in Healdsburg and knew that they were equipped with signaling devices and because of the lack of such equipment at the crossing in question, plaintiff believed it was not the main-track, but a side-track.

With all these facts and circumstances before the jury, I think the question of contributory negligence was one for its determination, and I do not think that under the circumstances narrated above it was negligence, as a matter of law, for the plaintiff, when within twenty-eight feet of the track, to divert his attention to his driving and not to look further for the train.

. The question of contributory negligence having been submitted, properly, to the jury by the trial judge, the verdict should be binding upon appeal.

Richards, J., and Shenk, J., concurred.

Rehearing denied.

Richards, J., Shenk, J., and Langdon, J., dissented.