[Civ. No. 2467. Third Appellate District.—October 13, 1922.]

A. F. REGER et al., Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE—RAILROAD CROSSING ACCIDENT—EVIDENCE—CONTRIBU-TORY NEGLIGENCE.—In this action for damages for injuries sustained in a railroad crossing accident, leaving out of consideration the evidence concerning what plaintiff understood as a signal

1. Right of traveler to recover for injuries received while crossing railroad track ahead of train known to be approaching, note, 21 Ann. Cas. 1171.

to cross, plaintiff's familiarity with defendant's tracks and trains and her knowledge that a train was about to arrive, coupled with the fact that at any time after reaching a point about forty feet from the nearest rail there was an unobstructed view along the main line in the direction from which the train came, presented a clear case of contributory negligence.

[2] Id.—Railroad Crossing — Duty to Look and Listen — Reliance upon Signal of Baggageman—Want of Authority.—The fact that plaintiff stopped and looked before attempting to cross defendant's track, though from a point where she could see but a short distance along the track, did not relieve her from the duty of continuing to look and listen, particularly after she had reached a point from which she had an unobstructed view of approaching trains; neither was she relieved from the duty of continuing to look and listen by reason of her observance of a motion, which she understood as a signal to cross, made by a baggageman who was standing near the crossing, where such baggageman was acting without the scope of his authority either express, implied, or ostensible, and not in the course of his employment.

[3] Id.—Custom to Act as Flagman—Knowledge of Company—Liability.—If, though not expressly authorized, a baggageman customarily acted as flagman with the knowledge of the defendant railway company, or for such length of time as would justify the inference that the defendant railway company, in the exercise · of reasonable oversight of the conduct of its employees, ought to have known that he was so acting, the defendant railway company would be liable for the negligent discharge of such assumed duty.

[4] Id.—Duties of Flagman — Performance by Baggageman — Reliance upon.—The discharge of the duties of flagman is beyond the scope of employment of a baggageman and a traveler would not be justified in relying on the signal of such employee from mere knowledge of the fact that he was a baggageman.

[5] Id.—Retention of Baggageman as Employee—Ratification of Act.—The mere fact that after the accident the defendant railway company retained the baggageman who had given the signal by which plaintiff had been misled did not constitute such a ratification of his act in giving such signal as to make the defendant railway company liable for the consequences thereof.

APPEAL from a judgment of the Superior Court of Butte County. H. D. Gregory, Judge. Reversed.

The facts are stated in the opinion of the court.

Geo. F. Jones for Appellant.

Ware & Ware for Respondents.

FINCH, P. J.—This appeal is from a judgment in favor of plaintiffs for damages sustained in a railroad crossing accident.

Defendant's railroad runs north and south through the city of Chico. Fifth Street crosses the railroad at right angles. Defendant's depot is immediately north of the street and its west wall is forty-four and one-half feet east of the easterly rail of the main-line track. Projecting from the west wall is a small extension window. From the photographs brought up, it appears that the distance from the west side of the window to the nearest rail is at least forty feet. The accident occurred in the middle of the afternoon. As the south-bound train was drifting in on the main line at a speed, according to the varying estimates of the plaintiffs' witnesses, of from five to fifteen miles an hour, Mrs. Reger, one of the plaintiffs, approached the crossing from the east in an automobile driven by herself. The side curtains were in place. About fifty feet east of the track, where her view to the north was obstructed by the depot, she brought her automobile almost to a stop. The defendant's baggageman, R. A. Betz, who was at the north edge of the street near the main track with a baggage-truck, then made a motion which she understood to be a signal to cross. Betz was facing south at the time and the signal given was "a rotary motion with his left arm in front of his body." Betz testified that when he first saw Mrs. Reger approaching the crossing he held up his hand for her to stop but that she did not see the signal; that he then made a gesture with his left hand to direct her attention to the approaching train but did not signal for her to cross. Appellant concedes that the implied finding of the jury as to the nature of the gesture is conclusive under the evidence. On seeing the signal, Mrs. Reger proceeded westerly at a speed of three or four miles an hour, in low gear, until the oncoming train struck her automobile. [1] She testified that "she knew about the time the trains were supposed to arrive there and . . . knew this train was about to arrive because the busses and express wagons were standing there"; that she

had frequently driven over the crossing and was "familiar with the tracks and trains that came through there in both directions at different times during the day"; that when Betz gave the signal to cross she "looked out of the side curtains" to the north and saw no train and then proceeded to cross; that she did not remember whether or not she again looked; that she was listening for the train but heard no bell or whistle; that she first saw the engine when it was about fifteen or twenty feet away and when the front wheels of the automobile had reached the easterly rail of the track. Other witnesses for the plaintiff testified that they heard the train whistle prior to the accident. At any time after reaching a point about forty feet from the nearest rail there was an unobstructed view along the main line to the north. Leaving out of consideration the signal to cross, the evidence presents a clear case of contributory negligence. (*Koch* v. *Southern California Ry. Co.*, 148 Cal. 677 [113 Am. St. Rep. 332, 7 Ann. Cas. 795, 4 L. R. A. (N. S.) 521, 84 Pac. 176]; *Griffin* v. *San Pedro, L. A. & S. L. R. R. Co.*, 170 Cal. 772 [L. R. A. 1916A, 842, 151 Pac. 282]; *Eddlemon* v. *Southern Pac. Co.*, 41 Cal. App. 340 [182 Pac. 811].)

[2] Respondents contend, however, that Mrs. Reger was so far misled by the signal to cross that the finding of the jury on the issue of contributory negligence is conclusive on appeal. The judgment of nonsuit in the case of *Koch* v. *Southern California Ry. Co.*, *supra*, was affirmed on the ground that the plaintiff was not justified in relying exclusively upon the implied invitation of open crossing gates and the absence of warning bell or whistle. The court said: "While the raising of the gates justified the plaintiff in attempting to cross when he did, and while that fact and the facts that no whistle was sounded and no bell was rung are to be taken into consideration on the question of how much he must himself look and observe as he makes his way across, these circumstances do not excuse him from looking and listening and taking thought for his own safety. He cannot rely wholly upon them, and cannot recover without showing more as to his own conduct than that he so relied." In so far as concerns the question of contributory negligence, an invitation to cross, whether direct or implied, is important only as bearing upon the *quantum* of care

required of the traveler. Greater reliance is naturally placed in the positive signal of a flagman to cross than in the invitation which his absence from his post or the fact of open gates implies. ''The fact that a flagman signals a traveler to cross does not absolutely relieve the latter from the duty of looking and listening, but that fact may be sufficient to carry the case to the jury.'' (Elliott on Railroads, 3d ed., sec. 1661.) If it be conceded that Betz had authority to discharge the duties of flagman then, under the circumstances shown, it cannot be held that Mrs. Reger was guilty of contributory negligence as matter of law. Betz testified that when he first saw Mrs. Reger she was looking south down the track; that ''there was an engine standing down there, and with steam up, and she was evidently watching it.'' She was under the necessity of giving some attention to the automobile she was driving and to the street ahead. She listened for the train and did not hear it, though others did. She looked before attempting to cross, though from a point where she could see but 150 feet northerly along the track. ''The mere fact of looking and listening is not always a full performance of the duty incumbent on the traveler, for he must also exercise care to make the act of looking and listening reasonably effective, and must usually continue to be on the lookout and exercise his faculties until he has crossed.'' (Elliott on Railroads, 3d ed., sec. 1661.) ''But it cannot always be said that he is guilty of contributory negligence as matter of law because he looked and listened from one point rather than another, or because he did not continue to look and listen at all times continuously for approaching trains, where he was misled by the company or his attention was rightfully directed to something else as well.'' (Id., sec. 1662.)

Appellant contends that it is not liable for the consequences of the negligent signal because in giving it Betz was acting without the scope of his authority and not in the course of his employment. The defendant had not authorized him to act as flagman. Neither had it at any time maintained a flagman at the crossing. Respondents urge that Betz had implied authority to control traffic during the movement of trains across the street. About 125 feet south of the center line of the street there was a standpipe from which the engines of south-bound trains were sup-

plied with water. It was the custom of such trains to stop when the engine reached the standpipe, thus blocking the street, the baggage-car then standing across the center line of the street. For the purpose of loading and unloading baggage, Betz was accustomed to run his hand-truck from the depot to a point where this car was expected to stop. Betz testified that he was not directed by the defendant to regulate traffic at the crossing and was not "told by anyone to do anything concerning the stopping or starting traffic across that street and crossing"; that the station agent hired him and took him to the baggage-room and told him what to do therein and to "put the baggage on the train and take it from it and keep the books right," and that "the man that was working in the baggage-room at that time showed" him what to do in connection with handling the baggage; that hundreds of machines drive up and stop from five to fifty feet from the track; that "very seldom a train goes by but what a machine comes up and stops"; that at the time of the arrival of the afternoon south-bound train "there is sometimes none, sometimes two or three, and sometimes six or seven"; that it is sometimes necessary for him to ask automobile drivers to back away from the track to enable him to run his truck to the baggage-car. Three witnesses for plaintiffs gave testimony relative to the practice of the baggageman in signaling travelers. J. H. Bogges testified that, off and on for two or three weeks, "he had seen Betz signal persons driving along the street to stop; that he has made motions to me and I have seen him make motions to others. . . . Motions to stop." J. A. Brown testified that for a period of eighteen months he had frequently seen the baggageman hold up his hand for travelers to stop, "that a train was coming, or something like that. . . . I think I have seen him motioning for people to go ahead but I don't know for certain. . . . When he comes along with the trucks, if there is anyone in the road, he generally whistles or something like that to get them out of the way"; that he did not go out into the street to signal people especially but that he signaled them to stop if he happened to be there; that he did not make it a practice to signal people except when he was preparing to get baggage from the train. John H. Murphy testified: "I have seen him [the baggageman] on several occasions regulate traffic to

the extent that [when] he was getting his trucks in position automobiles would come up practically opposite the first track there and he would have to move them out of the way back in the street so he could put his trucks into position in order to take baggage out of the train, and sometimes he would go out ahead and move the automobiles or wagons that was there just as the train was coming in; he would move them back and put his trucks in there, and would generally holler 'gangway' or something like that. . . . I have seen a number of baggagemen there and they had to do that. . . . I have been there at the depot day in and day out and I have occasionally seen him regulating traffic more than once. . . . Q. The only regulation of traffic which you have seen him make was to get the people out of the way so he could get his trucks out? A. Not only people but I have seen him regulate vehicles there. Q. Those vehicles that you speak of, was that the through traffic or the vehicles coming up for the train? A. No, it was through traffic, and the vehicles that there were there also. Q. These vehicles going along Fifth Street across the track? A. Yes, sir, people going along Fifth Street that intended to keep on going. Q. You do not seem to indicate that he got out back of the station? A. No, sir; he would have to move them back to get the American Express wagons up there. Q. I do not see how he regulated through traffic, if a man was going through with his automobile, did he go out and stop him on account of his truck? A. No, sir; that is not it, but they came up too close to the tracks so he couldn't get through. Q. They would stop their cars and wait for the train to pass? A. Yes, sir. Q. And he would regulate them? A. He would back them up so he could get through, if they were in his way." Mrs. Reger testified that she had never "been stopped at that crossing or signaled at that crossing before" by the baggageman or anyone else. There is no testimony tending to show that Mrs. Reger knew, prior to the accident, that Betz or any other employee of the defendant had ever signaled any traveler either to stop or to cross.

Within the scope of his authority as baggageman, Betz was the agent of the defendant. An agent has authority "to do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his

agency.'' (Civ. Code, sec. 2319.) In so far as material here, Betz was expressly authorized to convey baggage to and from trains. It was his duty to run the baggage-truck out into the street on the arrival of south-bound trains. The defendant was liable for his negligence in the discharge of that duty. Had a collision occurred between the automobile and the truck by reason of the negligent signal, then the negligence of Betz in giving the signal would have been the negligence of the defendant, for in that case the injury would have been caused by an instrumentality under the employee's control while being used by him in the course of his employment in the defendant's business, and the driver would have been justified in relying on the invitation to cross as a declaration that the truck would be so controlled as not to interfere with the passage of the automobile. Betz, however, had no control over the movement of trains, and no implied authority, as baggageman, to invite travelers to cross the track or to warn them against attempting to cross. In so far as any express or implied authority is concerned, a traveler would be no more justified in relying on the invitation of a baggageman as an assurance of safety from passing trains than on that of one sustaining no relation to the company. The protection of travelers at crossings is not one of the usual duties of a baggageman. His duty to travelers along the street is, not to guard them against danger from all the operations of the company, but only from those under his own control. The limit of his duty and authority in this connection is not unlike that of an engineer in charge of a train. A traveler would be justified in relying on the invitation of an engineer in control of an approaching train as a declaration that the crossing might be safely made without danger of injury from that particular train, but it would afford no assurance of safety from the movement of other passing trains, because the engineer's duty, unlike that of a flagman, is not to safeguard crossings generally, but only against the negligent operation of his own train. If travelers were justified in relying for their safety on the signals of the baggageman, on the assumption that he was authorized to act as flagman during the movements of trains, then they had a right to rely on his absence from the crossing, or his failure to signal if present, as an implied invitation to cross. But he

had other duties to perform which manifestly would prevent him from at all times giving such signals and, hence, they could not reasonably have understood that the giving of such signals was a part of his duty. "Where the injury has resulted from the omission or negligent performance of an act which it was no part of the duty of the master to perform, and in the doing of which no duty of the master was being performed, then the person through whose negligence the injury has resulted, whatever may be his grade or rank of employment, is not as to that act the representative of the master, and the responsibility for injury is upon the individual actor and not upon the employer." (*Donnelly* v. *San Francisco Bridge Co.*, 117 Cal. 417, 423 [49 Pac. 559].)

[3] The authority of a baggageman to act as flagman may, of course, be proved by circumstantial evidence. "One customarily permitted to act as flagman, although not employed for that purpose, may render the company liable for his negligence." (Elliott on Railroads, 3d ed., sec. 1651.) If, though not expressly authorized, he customarily acted as flagman with the knowledge of the defendant, or for such length of time as would justify the inference that the defendant, in the exercise of reasonable oversight of the conduct of its employees, ought to have known that he was so acting, then the defendant would be liable for the negligent discharge of such assumed duty. In *Walker* v. *Hannibal & St. J. R. Co.*, 121 Mo. 575 [42 Am. St. Rep. 547, 24 L. R. A. 363, 26 S. W. 360], it is said: "In order to make defendant liable for the act of the baggageman for acts of negligence committed not in the line of his employment, it must be shown that he either had express authority to transact the business connected with the injury, or that defendant, by its officers, knew that he, as its agent, was so engaged for such length of time as would justify the presumption that he was authorized to so act." The only act of negligence relied on by respondent is that of giving the signal to cross. The burden was on the plaintiff to prove, not only that the negligent signal was given, but that the baggageman was authorized by the defendant to give it. The evidence falls far short of showing, except by the most strained interpretation thereof, that the baggageman had ever acted as flagman, or that he had ever signaled a traveler to cross the track, except in the single instance in-

volved in this action, or that he had ever signaled travelers to stop their vehicles or to back them away from the track, except for the purpose of making room for the movement of his baggage-truck. The evidence does not show that Betz had authority, either express, implied, or ostensible, to act for the defendant in giving the signal to cross. "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, sec. 2317.) The evidence does not show that Mrs. Reger knew that the baggageman had been in the habit of signaling travelers to stop for any purpose. Under such circumstances, it does not appear in what manner she could have been misled into the belief that he had authority to act as flagman. "Although not originally under obligation to do so, if the company has maintained a flagman at a particular crossing for a long time and his presence is notorious, travelers have, within limits, a right to assume, when he is absent, that no train is approaching, and his absence or permanent removal, without notice to the public is negligence or at least is evidence of negligence, but where, not knowing that a flagman had usually been stationed at the crossing, the traveler's conduct was in no way influenced by his absence, such absence creates no liability." (Elliott on Railroads, 3d ed., sec. 1157.) In the case of *Hayes* v. *New York, N. H. & H. R. Co.*, 91 Conn. 301 [99 Atl. 694], the authorized flagman, having no flag, however, signaled plaintiff to cross the track and the plaintiff was injured in attempting to do so. The court said: "All that Hayes knew was that the man was standing beside the crossing, and was beckoning to him as he had to another car preceding his. This is not important as bearing upon the defendant's responsibility for the acts of the flagman, but it does possess significance in judging of the measure of prudence characterizing Hayes' conduct in relying upon the signal of one who was a stranger to him." (See, also, *Elias* v. *Lehigh Valley R. Co.*, 226 N. Y. 154 [123 N. E. 73]; *Peck* v. *Grand Trunk Western Ry. Co.*, 155 Mich. 430 [119 N. W. 578].) In discussing the question of ostensible authority, in *Harris* v. *San Diego Flume Co.*, 87 Cal. 526 [25 Pac. 758], it is said: "There are two essential features of an authority of this character, viz.: the party must believe that the agent had authority, and such belief

must be generated by some act or neglect of the person to be held.'' [4] The discharge of the duties of flagman is beyond the scope of employment of a baggageman and a traveler would not be justified in relying on the signal of such employee from mere knowledge of the fact that he was a baggageman.

[5] After the accident the defendant retained Betz as baggageman. Respondents contend that his retention constituted such a ratification of his act as to make the defendant liable for the consequences thereof, citing the case of *Edmunds* v. *Atchison etc. Ry. Co.*, 174 Cal. 246 [162 Pac. 1038], and Mechem on Agency, 2d ed., sec. 475. The authorities cited do not sustain the contention but rather the contrary. There is much plausibility in the testimony of Betz to the effect that he did not intend the gesture made as a signal to cross the track but that he was endeavoring to call attention to the approaching train. There is no evidence that he had ever theretofore signaled travelers to cross the track or had given any signals except in connection with his movements of the baggage-truck. In *Edmunds* v. *Atchison etc. Ry. Co., supra,* it is said: ''The omission to dispense with the services of the offender, standing by itself and unsupported by any other circumstances indicating the employer's approval of his course, is never sufficient to establish ratification.''

The judgment is reversed.

Anderson, J., *pro tem.,* and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 11, 1922.

All the Justices present concurred.