[Civ. No. 12768. Second Appellate District, Division Two.—March 26, 1941.]

WALTER D. COOPER, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Appellants.

Frank Karr and W. I. Gilbert for Appellants.

Parker & Stanbury and John S. Taylor for Respondent.

MOORE, P. J.—Defendants appeal from a judgment after verdict in favor of plaintiff for $11,062 by reason of personal injuries and property damage resulting from a collision between plaintiff's automobile and a locomotive tender of a train of defendant company. Defendants Fowler and Carter were company employees and train operatives. At the proper times defendants' motions for directed verdict and for a new trial were denied.

The principal contentions made here are that the verdict is entirely unsupported by the evidence, and that as a matter of law defendants were free from negligence and that plaintiff was guilty of contributory negligence. Such contentions require the application of the familiar principle " . . . that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. To establish the defense of contributory negligence as against the verdict of a jury, the evidence must be such that the appellate court can say that there is no substantial conflict on the facts and that from the facts a reasonable man can draw but one inference, which inference points unerringly to the negligence of the plaintiff proximately contributing to his own injury." (*Crawford* v. *Southern Pac. Co.*, 3 Cal. (2d) 427, 429 [45 Pac. (2d) 183].)

Bearing in mind the principles announced in the cited decision, we now briefly review the facts established. On the 7th day of January, 1939, between 3:30 and 3:45 o'clock A. M., plaintiff was driving his automobile in a northerly

direction on Alameda Street, in the city of Los Angeles, en route to his place of employment. Alameda Street is an arterial boulevard which, near the scene of the accident, is divided into two roadways, separated by the train tracks. The westerly roadway upon which plaintiff was travelling is 50 feet in width. At the point of the accident, a spur track on which plaintiff was attempting to drive, crosses that portion of the street on the west side of the tracks. It extends from the west curb line of Alameda westerly to the train track. The spur track was flush with or slightly depressed below the surface of the street. One of the company's trains consisting of a tender, locomotive and two box cars was being operated on the spur track by defendants Fowler and Carter. The train was backing on the spur track toward the main train track at a speed of from 6 to 8 miles per hour. The tender was the foremost car and preceded the locomotive whose front end was headed northwesterly or away from the street. As plaintiff approached the spur track, he travelled at a speed of from 25 to 30 miles per hour. When about 75 feet from the spur, plaintiff first observed the track in the beam of his own headlights. He took his foot from the accelerator, looked up the spur track but saw no train. Almost at the same instant, he observed something black and just before the impact he discerned it was the train moving into the street on the spur track. He was in the act of applying his brakes just as the collision occurred. The foremost corner of the tender struck the left side of plaintiff's automobile. As a result the automobile was almost demolished and plaintiff received injuries which will cause him to be crippled for life.

No sign was posted on Alameda Street to indicate the presence of the spur track as a warning to north-bound traffic although a crossing sign stood on the west side of Alameda north of the spur, visible to south-bound traffic but it was not visible to a motorist driving northerly along the street, as was plaintiff as he approached the spur. A lamp for lighting the street was suspended over the west curb of Alameda about 45 feet southerly of the intersection of the spur track and the curb line. Although there is some evidence that the street lamp was lighted at the time of the collision, plaintiff testified that it was not. William Turner, janitor in a neighboring bottle works, testified to the same effect. His testi-

mony was that the street lamp had not been lighted during the entire month of January, 1939, and was not lighted on the morning of the accident. Likewise, Police Officer Sherman Reed, who arrived on the scene before plaintiff had been removed, after making an examination of the lighting conditions, testified that the nearest illuminating street lamp was at 50th Street. While its distance from the point of the collision was not accurately established, it was definitely proved to be more than 300 feet to the northward at 50th Street.

Defendants' contention is that the train was brought to a stop before reaching the point of collision 9 feet from the east curb line of the westerly roadway of Alameda and that plaintiff drove his car into the train, but since the jury chose to believe the testimony of plaintiff that the train was moving until the time of the actual collision, their finding is justified as to that issue. The physical facts, as demonstrated by the photographs received in evidence, give substantial support to plaintiff's testimony. Those photographs demonstrate that the front of the automobile was only slightly impaired while its left side was practically demolished. Moreover, the step on the advancing end of the tender was bent directly backward and not in the direction in which plaintiff was travelling. From such facts, the jury might very properly have determined that the train was still moving at the time of the impact. The evidence concerning the absence of lights on the train was likewise conflicting. Defendants Fowler and Carter testified that the headlight on the advancing end of the tender was aflame as that car rolled toward the path of plaintiff and that a red lantern was suspended from a bracket on the same end. Other witnesses, who came after the collision were positive that, at the times of their arrivals, the headlight and lantern were both lighted. Contrary to such testimony, however, plaintiff testified that although he looked, he saw no light on the advancing tender or upon any part of the train. In support of plaintiff, it must be observed that defendants admitted that the same train, just one hour earlier, proceeded upon the spur track with no light upon the advancing end of the train.

While defendants' witnesses testified that the bell of the locomotive was ringing, plaintiff declared that, while with his unimpaired hearing he listened, he heard no bell. He

admitted that he did hear a chugging, squeaking sound from the train but saw it only a split second before the impact.

 Defendants' contention that such negative testimony is insufficient, in view of the positive testimony to the contrary, to support the finding that no warning was given, cannot be sustained, in view of the law that the negative testimony of one who was in a position to hear and observe whether the warning bell was sounded is sufficient to sustain a verdict as to the non-giving of such signals. (*Downing* v. *Southern Pac. Co.*, 15 Cal. App. (2d) 246 [59 Pac. (2d) 578]; *Lahey* v. *Southern Pac. Co.*, 16 Cal. App. (2d) 652 [61 Pac. (2d) 461].) In view of the substantial evidence received in proof of defendants' negligence, in spite of substantial conflicting evidence, it remains that the implied findings of the jury as to defendants' negligence are amply supported by the evidence. Where a party operates his automobile upon a public street at a lawful rate of speed and while maintaining a proper lookout, approaches a spur track, which is both unlighted and unguarded and not indicated by sign or signal, it is negligence on the part of the train operatives to proceed upon such track without proper lights or appropriate signals.

 Defendants maintain that plaintiff was guilty of contributory negligence as a matter of law in failing to stop, look and listen before attempting to cross the track. There is no absolute requirement in the law that a driver of a vehicle must actually stop before crossing a railroad track. Whether a driver should stop as well as look and listen for trains, depends upon the circumstances of the particular case and is ordinarily a question for the jury. (*Hoffman* v. *Southern Pac. Co.*, 101 Cal. App. 218 [281 Pac. 681]; *Robbins* v. *Southern Pac. Co.*, 102 Cal. App. 744 [283 Pac. 850].) '' . . . where one's vision of the track in the direction from which an approaching train may be expected is unobstructed for a reasonable distance, and his hearing is not impaired by extraneous noise or conditions, it is not necessarily requisite for one actually to stop before crossing a railroad track. Where one's view of the track and ability to hear an approaching train would not be improved by actually stopping at the crossing, it is not imperative that he should do so.'' (*Hoffman* v. *Southern Pac. Co.*, 215 Cal. 454, 459 [11 Pac. (2d) 387].) Whether under the circumstances, a motorist

is negligent in failing to stop his vehicle before crossing the track must be determined by the jury. The foregoing principles apply here where the map in evidence discloses that as plaintiff approached the crossing his view of Alameda was unobstructed; there was no warning sign and nothing indicated that the spur was in frequent use. The jury having been fully instructed relative to the stop, look and listen rule, by its verdict must have concluded that plaintiff was not negligent in failing to stop before attempting to cross the track.

Defendants predicate their contention that plaintiff failed in his duty to look, upon their claim that his lights were so defective as to preclude the maintenance of a proper look-out. They argue that by sections 618, 632 and 649 of the Vehicle Code, the headlights of an automobile are required to be of sufficient power to illuminate an object in the path of travel from 175 to 200 feet in advance, and that, therefore, plaintiff was negligent in not seeing the spur track before he was within 75 feet of it. For two reasons this argument fails. First: Referring to the cited sections of the Vehicle Code, section 618 prescribes the conditions under which lights were required. It does not regulate the brilliancy of such lights. Section 632 deals solely with the acetylene lights and is not applicable to the present situation for there is no evidence that plaintiff's automobile was equipped with acetylene lamps. Section 649 requires the department to determine whether headlights, submitted for test, produced ample light to reveal "any vehicle or person" within approximately 175 feet. But plaintiff's ability to see a vehicle or person within 175 feet of plaintiff's automobile was not material. The only object to be seen by plaintiff was a spur track which was flush with or below the surface of the road. Certainly it cannot be classified as a "vehicle or person"; therefore the requirement of section 649 cannot be applied. Second: There is absolutely no evidence concerning the distance within which plaintiff's headlights would have revealed a vehicle, person or any other object. The only evidence on the subject of the illumination caused by plaintiff's headlights was that plaintiff did not observe the tracks until he was 75 feet from them. There is, therefore, no evidentiary basis for the claim of plaintiff's non-compliance with the requirements of the Vehicle Code with respect to plaintiff's head-

lights. That plaintiff did in fact maintain a lookout for trains the jury might well have believed. Upon seeing the tracks, he looked in the direction from which trains were to be expected. Seeing nothing, he looked again, when something black hove into view only an instant before the collision.

The contention that plaintiff failed in his duty to listen before crossing the track must likewise fail. Plaintiff testified "Absolutely, I listened". This testimony, when considered with the testimony that although there was nothing wrong with his hearing, he heard neither bells nor noise of the train, convinced the jury that he was not remiss in his duty to listen. ■ Since the evidence is abundant to support the verdict, the jury's implied findings that defendants were negligent and that plaintiff was free from contributory negligence, the court was warranted in denying the motion for a directed verdict.

■ The remaining assignments of error are concerned with the giving of certain instructions which defendants asserted were erroneous. By plaintiff's instruction No. 14 the jury was informed that: " . . . the mere fact that some other driver in the position of the plaintiff, Mr. Cooper, might have avoided the accident by the exercise of ordinary care is not enough to prove that the plaintiff was negligent. What constitutes ordinary care under a given set of circumstances is not a fixed and standardized matter to be determined by any arbitrary rule. Different individuals, all exercising ordinary care, might behave differently under the same circumstances. Some might see what others would not and do what others would omit to do. Therefore, if an individual, exercising ordinary care under the circumstances, is nevertheless involved in an accident, the law does not brand his conduct as negligent merely because some other person, similarly situated, might have avoided it." In plaintiff's instruction No. 9, the jury was instructed "that the question of what constitutes ordinary care in a given situation is not one to which a fixed and stereotyped answer may be given. That is to say, circumstances may be such that two individuals, each exercising ordinary care, might behave differently, one becoming involved in an accident and the other not. If you find that under all of the circumstances in this case, different motorists situated as was the plaintiff,

Mr. Cooper, all exercising ordinary care, might have differed as to their observation and behavior, some being involved in a collision with the train and others not, then I instruct you that you may not adopt a course of conduct which would have avoided the accident as a conclusive standard by which to determine the question of negligence. In other words, the mere fact that some other and different course of conduct on the part of the plaintiff might have avoided the accident is not enough to charge him with negligence if you find that he did, in fact, drive with ordinary care under all the circumstances notwithstanding the happening of the accident.'' The vice in these instructions is claimed to be: (1) that they erroneously define the standard of care applicable to persons crossing a railroad track and that they conflict with other instructions on the same subject; (2) that they erroneously enlarge upon the accepted definitions of ''ordinary care''; and (3) that they erroneously state that the happening of an accident that could have been avoided by the exercise of ordinary care is not proof of negligence.

Defendants' first claim of error is based on the erroneous assumption that the law fixes an absolute duty on the part of a person about to cross a railroad track to stop, look and listen. However, as above indicated, whether plaintiff in the exercise of ordinary care was required to stop before crossing the track was a question of fact which was properly submitted to the jury. When the questioned instructions are considered as a whole it will be seen that by them the jury was told in effect that there is no fixed standard, or arbitrary rule by which to determine what constitutes ordinary care and that one who is exercising ordinary care is not negligent merely because other persons might have behaved differently; that a finding of negligence may not be predicated upon the happening of the accident alone, or upon the fact that by adopting some other course of action the mishap might have been avoided. In numerous other instructions the jury was informed that it was plaintiff's duty in the exercise of ordinary care to look and listen before crossing the tracks and to stop *if necessary* and that under certain circumstances it was incumbent on plaintiff to stop and go forward on foot *if necessary* in order to see or hear. It cannot be said that the instructions complained of are in conflict with those relating to the duty to stop, look and listen. Whether or not

plaintiff was required to stop was properly submitted to the jury. Instructions 9 and 14 were supplementary instructions aimed at guiding the jury in determining the necessity for stopping and in determining whether or not plaintiff had fully performed his duty to look and listen.

The assertion that instructions 9 and 14 erroneously enlarge upon the accepted definition of "ordinary care" cannot be sustained. Defendants cite no authority in support of their position. The questioned instructions must be read in conjunction with other instructions given by the court relating to ordinary care and the conduct of a reasonably prudent person similarly situated. When so considered the instructions, though not cleverly phrased, are not objectionable. ▮ There is no fixed or exact standard, other than the general one of ordinary care, by which it can be determined whether or not a person has acted as a reasonably prudent person under the circumstances of a particular case. (*Scott* v. *San Bernardino Valley Traction Co.*, 152 Cal. 604 [93 Pac. 677] ; *Swigert* v. *Pacific Elec. Ry. Co.*, 7 Cal. App. (2d) 661 [47 Pac. (2d) 353].) The fact that the behavior of other persons might have avoided the accident is not determinative of the issue as to plaintiff's negligence. (*Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514, 521 [74 Pac. 15, 98 Am. St. Rep. 85, 63 L. R. A. 238].) In the Harrington case, several bicyclists approached a street car crossing and all except plaintiff managed to escape injury. It was there held that the fact that the others escaped injury was in no way determinative of the question as to whether plaintiff used reasonable care. Neither the fact that the accident happened nor the fact that by adopting some other course of action the mishap might have been avoided is determinative of the question of negligence. Because plaintiff might have failed to adopt every means of safety available, he did not necessarily render himself negligent. (*Liverpool etc. Ins. Co.* v. *Southern Pac. Co.*, 125 Cal. 434 [58 Pac. 55] ; *Mast* v. *Claxton*, 107 Cal. App. 59 [290 Pac. 48] ; 45 Cor. Jur., p. 598.)

▮ Instruction No. 12 is next assigned as error. It reads as follows: "You are instructed that if you find that under all of the circumstances of this case, having in mind the nature of the crossing, whatever you find it, from the

evidence, to have been, a person of ordinary prudence in the position of the plaintiff would have believed, in the exercise of ordinary care, that he could proceed across the tracks in safety without stopping his car, and without making any further or different observations than you may find from the evidence the plaintiff made, if any, then I instruct you that the plaintiff, Mr. Cooper, was not required to stop his car before entering upon the tracks''. Relying upon their claim that there is no evidence that plaintiff either looked or listened, defendants assert that the instruction erroneously informs the jury that plaintiff was not required to stop even though he did not look or listen. This contention must likewise be rejected, however, in view of our conclusion that there was ample evidence to warrant the jury in concluding that plaintiff did look and listen before attempting to cross the track. The instruction properly states the law relating to the stop, look and listen rule. (*Hoffman* v. *Southern Pac. Co., supra.*)

██ The final contention raised by defendants is that the court erred in giving plaintiff's instruction No. 2, which reads as follows: ''You are instructed that section 486 of the California Civil Code provides as follows: 'A bell, or (*sic*) at least twenty pounds weight, must be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where the railroad crosses any street, road, or highway, and be kept ringing until it has crossed such street, road or highway; or a steam whistle, air siren, or an air whistle must be attached, and be sounded, except in cities, at the like distance, and be kept sounding at intervals until it has crossed the same, under a penalty of one hundred dollars for every neglect, to be paid by the corporation operating the railroad, which may be recovered in an action prosecuted by the district attorney of the proper county, for the use of the state. The corporation is also liable for all damages sustained by any person, and caused by its locomotives, train or cars, when the provisions of this section are not complied with'.

''You are therefore instructed that it was the duty of the defendant, Southern Pacific Company, in traversing the intersection of its tracks with Alameda street and for a distance of at least eighty rods before reaching Alameda street, to

ring a bell as required by the said statute.'' It is claimed that the effect of this instruction was to inform the jury that they might find the defendant company to be guilty of negligence for failing to ring the bell without regard to the question of proximate cause or of plaintiff's contributory negligence.

In support of their argument, defendants rely upon the case of *Smellie* v. *Southern Pac. Co.,* 128 Cal. App. 567 [18 Pac. (2d) 97, 19 Pac. (2d) 982], in which the instruction criticized was an attempt to convey to the jury the substance of section 486, Civil Code, and which declared the absolute liability of defendant without regard to proximate cause or contributory negligence. The distinguishing features of the two cases are readily apparent. In the Smellie case the jury was told unequivocally that a failure to comply with the provisions of the section in question rendered the railroad company liable for all damages caused by its locomotive. In the instant case, after reading the provisions of the statute in full, the jury was instructed that it was the *duty* of the defendant company to comply with the provisions of the statute. In the Smellie case no other instructions relating to the failure to comply with the provisions of section 486 were given. In the instant case several other instructions were given on this subject: One instruction declared that plaintiff had no right to rely upon defendants to give any signals; four other instructions stated essentially that defendants were under no obligation to ring any bell or give any signal whatever after their train had entered the crossing. Furthermore, an instruction was given at the defendants' request which was in the language of section 486 but quoted only that portion of such section ending with the words ''under a penalty of one hundred dollars for every neglect, to be paid by the corporation operating the railroad,'' and concluded with the instruction that defendants were not required to blow a whistle and that ''no negligence on the part of the defendants could be predicated upon the failure to blow the whistle in the event you shall further find that the bell was rung as above outlined and was of the weight prescribed by the statute.'' The jury was elsewhere instructed in general terms relative to negligence, proximate cause and contributory negligence. Furthermore, the in-

struction criticized was invited by defendants' causing the court to read to the jury the greater portion of section 486.

Judgment affirmed.

Wood, J., and McComb, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 22, 1941.