[Civ. No. 8074. Third Dist. Aug. 25, 1952.]

CARL V. JANSEN et al., Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

834

Devlin, Diepenbrock & Wulff for Appellant.

Thomas C. Perkins for Respondents.

PEEK, J.—Following the filing of the original opinion of this court defendant company petitioned for a rehearing, which was granted. The contentions of appellant in support thereof are that the court "omitted from and/or incorrectly stated" material facts in the opinion, and that there was a failure to "specifically consider" certain issues raised. Counsel then concludes the petition with a statement that this court by its opinion has accomplished a reversal "of existing principles of law" by placing a "directly contrary construction upon the holdings of a multitude of cases." We shall consider the contentions of appellant as enumerated. How-

ever it would appear unnecessary to discuss the conclusion of counsel or the import contained therein.

 Since it is so elementary, we did not believe it necessary in our original opinion to specifically refer to the oft-repeated but seldom-remembered rule that ". . . 'in reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary . . . principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' (Italics added.) (*Crawford* v. *Southern Pac. Co.* (1935), 3 Cal.2d 427, 429 [45 P.2d 183].)'' (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].)

With such rule in mind we reviewed the transcript at the outset of our original opinion to determine if there was "substantial evidence" in support of the verdict. Our original conclusion has in nowise changed—the evidence amply supports the verdict of the jury. We shall again summarize the evidence in support of the verdict; however we shall necessarily omit some portions thereof as well as fail to mention other portions which defendant relies upon, but which, because of their contradictory nature, the jury could reject, as it quite apparently did.

So summarized, the record shows that the controversy here in question arose out of a collision between a switch engine owned and operated by the defendant company and an automobile being driven by the plaintiff Carl V. Jansen and in which his wife, Meryl Jansen, was riding. On December 17, 1949, some time between the hours of 6:30 and 7:30 o'clock p.m. plaintiffs were driving northerly on Thirty-ninth Street, a fairly well-traveled arterial street in the city of Sacramento. The evening was cold, cloudy and dark. Mr. Jansen, who was driving, and his wife, who was riding in the front seat of their sedan with him, were as acquainted with the crossing in question as would persons be who had lived in a community for a number of years. Thirty-ninth Street at the point where it crosses over the privately owned right of way of the defendant company is approximately 36 feet

in width. Rather than approximate the distances as we did in our first opinion, we will take the figures mentioned by appellant; that the center line of the right of way at that point is 57.5 feet from the southern boundary or 55.4 feet to the southern rail and 41.25 feet from the northern boundary of said right of way. A single track is maintained thereon. It is uncontradicted that no regularly scheduled trains operate on said track but that it is used occasionally for the sole purpose of switching. It is likewise uncontradicted that there is no mechanical warning device at the crossing; the only warning is the usual cross-arm railroad sign. The intersection is lighted by one 325 watt street light located approximately in the center of Thirty-ninth Street at a point 75 feet north of the center line of the railroad tracks and approximately 27 feet above the ground. Respondents' view of the right of way was obstructed to a degree by houses and trees along both sides of the street. To the east, the direction from which the engine was coming, Jansen's view as he progressed northerly on Thirty-ninth Street was intermittently obstructed by a hedge and trees in the yard of the house immediately adjacent to the right of way. Also in the right of way itself was a large oak tree approximately 87 or 88 feet east of the easterly boundary of Thirty-ninth Street and approximately 20 feet north of the south boundary of the right of way. A passenger in a car immediately to the rear of plaintiffs testified that just before the collision respondents were proceeding at a speed of approximately 15 miles per hour.

The evidence was sharply in conflict as to whether or not a bell, whistle or other warning was sounded and whether or not the headlight on the engine was lighted. However, both Mr. and Mrs. Jansen, as well as the passenger in the car which was following them, testified they noticed no light nor did they hear a whistle or bell. The testimony was also conflicting as to whether or not the window on the driver's side of the car was open. The plaintiff Carl Jansen testified that he looked to his left and then to his right before reaching the southerly boundary of the right of way, his speed remaining constant at the rate of approximately 15 to 20 miles per hour; that after entering the right of way area he again looked to the left and then to the right, looking lastly to the right just prior to the impact and just as he was moving on to the track. His wife further testified that she looked to the right and saw the engine just prior to

the impact. The engineer was seated on the right side of the cab which was located at the rear of the engine. Thus the fireman who was seated on the left side of the cab was the only trainman who could observe traffic approaching from the south. He testified that he first saw plaintiffs' car when it was approximately 140 to 150 feet from the crossing and the engine was approximately 25 feet from the crossing; that he gave no warning to the engineer of the approaching automobile; that as the front of the engine was entering the crossing he realized respondent Jansen was not going to stop and that he then gave a warning to the engineer.

It is appellant's contention that the plaintiffs were guilty of contributory negligence as a matter of law, and in support thereof they rely primarily upon *Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 P. 788]. The contentions made under this heading are two-fold, to wit: A. "The Physical Facts Themselves Establish That the Plaintiffs are Guilty of Contributory Negligence, as a Matter of Law," and B. "The Plaintiffs Did Not Take Every Reasonable Opportunity to Look."

In the Koster case the accident occurred at about 4:29 a.m. on June 18, 1926, at which time, although before sunrise, it was already "practically daylight." At that hour the crossing was "unguarded." Koster lived only three blocks from the crossing and crossed over it on his way to work every day between the hours of 4 a.m. and 5 a.m. The court said: ". . . it must be assumed that he was quite familiar with said crossing and was aware that a passenger train, traveling southerly, crossed said street at about 4:22 o'clock a.m. each morning." The noise at the crossing, due to industrial activity in the vicinity at all hours during the summer season, made it impossible for a person in a closed car to hear "an approaching train, or even its bell or whistle." The right of way was 60 feet in width, containing three tracks, the center one being a main line track. Koster's view of the right of way in the direction from which the train approached was obstructed by an American Can Company factory and a high board fence, these structures extending for the full block up to the line of the right of way (21½ feet from the crossing). It was further contended by plaintiff that the view was even more obstructed by reason of a box car being spotted on the near track close to the crossing. The only estimate of Koster's speed was as being from 30 to 40 miles per hour, which estimate was made by the fireman who adjudged it to be such because from

the time of his first sight of the Koster car "the whole affair seemed like a flash."

Counsel for appellant also, in his opening brief, in contending the Koster case is here applicable, states:

"This special duty of care to take every reasonable opportunity to look and listen is premised upon the existence of the following two conditions precedent:

"1. That the crossing is an unguarded one, that is, a crossing where the railroad company does not maintain any flagman or automatic signal devices, such as gates, wigwags etc.

"2. That the plaintiff is familiar with the crossing and knows its location, and hence the track itself is a warning of danger. . . .

"Both of these two conditions precedent for the application of this doctrine are admittedly present in the case at bar, in that the crossing is unguarded and unprotected, and both plaintiffs admit that they were very familiar with this crossing." , "Therefore," continues appellant's argument, "whether or not the plaintiffs were guilty of contributory negligence as a matter of law depends solely upon whether or not the record shows without conflict that the plaintiff Carl V. Jansen did not [quoting from the Koster case] 'take advantage of *every reasonable opportunity* to look and listen' for a train before attempting to negotiate this crossing, and upon the further question, as to whether he would have seen and heard the approach of said train if he had taken these precautions."

Attempts to reduce negligence to rigid rules have never been successful. Rarely, if ever, will the facts of any two cases be identical. Hence, "The effort should be to apply settled principles of law to the facts in the particular case as they existed at the scene of the injury rather than determine the matter by matching cases." (*Antonian* v. *Southern Pac. Co.*, 9 Cal.App. 718, 734 [100 P. 877].)

As stated in *Toschi* v. *Christian*, 24 Cal.2d 354, 360 [149 P.2d 848], "the actor's conduct must always be gauged in relation to all the other material circumstances surrounding it and if such other circumstances admit of a reasonable doubt as to whether such questioned conduct falls within or without the bounds of ordinary care then such doubt must be resolved as a matter of fact rather than of law."

However, even if we resort to matching cases a complete answer to such argument is found in the case of *Hinkle* v. *Southern Pac. Co.*, 12 Cal.2d 691 [87 P.2d 349], which,

of all the cases examined, appears to be most analogous to the case at bar. Counsel for defendants, however, does not agree that the Hinkle case is analogous—stating that the so-called Koster case rule has no application "when collisions occur with freight cars which are shunted or pushed across highway crossings without notice or lights." Nevertheless the facts set out in the opinion of that case (and which because of the similarity we will set forth in detail) disclose that the railroad tracks and the highway intersected at about right angles—the highway running in a northerly to southerly direction. Mr. and Mrs. Hinkle, with Mr. Hinkle driving, were proceeding in a southerly direction. The crossing which consisted of three tracks, the center one being the main line track, was approximately 20 feet in width, and large pine trees grew within eight or nine feet of the track on both sides of the crossing. It was a very dark night and there was no overhead artificial lighting at the crossing or any point west of the crossing, the direction from which the train was backing, although there was an overhead light 150 feet to the east of the highway.

The train, consisting of a locomotive and tender, a dark red box car and a dark colored oil-tank car, was backing toward the crossing, thus, the oil-tank car, being the lead car, was the first over the crossing and the one with which the Hinkle car collided. The Hinkles in their attempt to traverse the crossing came to a stop within 4 to 8 feet of the northerly tracks and looked both to the right and left for any approaching train, but saw and heard nothing. They then proceeded across the tracks and when they were between the rails of the northerly track and the main line track, Mrs. Hinkle noticed the backing train to her right about 20 or 25 feet away and the next instant the impact took place. The Hinkles recovered judgment and an appeal was taken therefrom by the defendant company. The contentions there made were two: that the plaintiffs were guilty of contributory negligence as a matter of law for violating the "stop, look and listen" rule, and that the court gave certain erroneous instructions. The Supreme Court there said: "Having in mind the fact that the jury was at liberty to reject much of the evidence proffered in behalf of appellant, together with the circumstances that the accident happened on a very dark night at a narrow crossing where large pine trees were growing close to the tracks, and that the train was not approaching head-on with its headlight lighting up the track

ahead, but was backing toward the crossing, we cannot say as a matter of law that respondents were negligent in not seeing the backing train in time to avoid it. They were not, therefore, guilty of contributory negligence as a matter of law.'' (See, also, *Alloggi* v. *Southern Pac. Co.*, 37 Cal.App. 72 [173 P. 1117]; *Lloyd* v. *Southern Pac. Co.*, 111 Cal.App. 2d 626, 634 [245 P.2d 583].)

The similarities of that case and the instant case are apparent and, we feel, controlling. In both cases the same counsel make the same contention that plaintiffs were guilty of contributory negligence as a matter of law for violating what counsel terms the well-known stop, look and listen rule. In both cases the accident happened on a dark night at an ''unguarded'' crossing with which the parties were familiar. In both cases the ''testimony of the witnesses for the appellant not being reconcilable with the testimony of the respondents and their witnesses, it was necessary for the jury as triers of fact to determine which of the contrary versions of the accident should be accepted as true. It is self-evident that the jury accepted as true the testimony of the respondents and necessarily rejected a portion, at least, of the evidence proffered by appellant. (*Hinkle* v. *Southern Pac. Co., supra.*) Furthermore in the light of such evidence it must be assumed that again in both cases the statutory sound signals were not given. In both cases there was no head lamp lighting the path ahead of the lead vehicle. Under these last two facts—no light and no warning signal—it would make no difference whether the engine was going forward or backward. Likewise, in both cases, although there was an artificial light near the crossings involved, the light in neither case was overhead nor in the direction from which the train approached. Hence it must follow here, as in the Hinkle case, that such factors make the question of contributory negligence a proper one for jury determination.

Although the evidence in the Hinkle case was that they came to a full stop, whereas the Jansens did not, this difference in the two cases does not appear sufficient to vary the conclusions above reached.

Of further interest in regard to appellant's first contention is the case of *Hoffman* v. *Southern Pac. Co.*, 101 Cal.App. 218 [281 P. 681] (petition for hearing in Supreme Court denied). The case was decided in 1929, approximately two months after the Koster case and again we find the same counsel making substantially the same contentions and citing

many of the same cases. Nevertheless this court there held that although because of fog, visibility was lessened:

"The law does not require the driver of a vehicle to actually stop under any and all circumstances before crossing a railway track. There is no absolute duty on the part of one to first stop before he attempts to cross the track. . . . The test as to the existence of contributory negligence on the part of one who attempts to cross a railroad track ahead of an approaching train is the question as to whether under such circumstances a reasonably prudent person would have undertaken to do so. When the circumstances of a particular case are of such a nature that different conclusions may reasonably be .drawn as to the prudence of a person in attempting to cross a railroad track the question of contributory negligence becomes one for the determination of the jury. [Citing among other cases *Koster* v. *Southern Pac. Co.*, (207 Cal. 753 [279 P. 788]).] It is self-evident that the plaintiff's vision down the track would be neither improved nor impaired by the mere stopping of the machine. His vision could penetrate the fog no further from a stationary machine than from one which was in motion."

And if further contemporary or other support of our present holding be necessary, the recent case of *Lloyd* v. *Southern Pac. Co., supra* (hearing in the Supreme Court denied), may well be cited. There the court, quoting from what it termed the restatement of the rule as originally stated in *Koch* v. *Southern California Ry. Co.*, 148 Cal. 677, 680 [84 P. 176, 113 Am.St.Rep. 332, 7 Ann.Cas. 795, 4 L.R.A.N.S. 521], and quoted with approval in the recent case of *Spendlove* v. *Pacific Electric Ry. Co.*, 30 Cal.2d 632, 641 [184 P.2d 873], stated: ". . . where it is shown that a [plaintiff] has exercised some care, the question whether or not the care actually exercised was due and sufficient will always be a matter for determination by a jury." Also in *Andre* v. *Allynn*, 84 Cal.App.2d 347 [190 P.2d 949], the court, likewise speaking of the Spendlove case, said "This last decision illustrates the fact that in the last few years the tendency of the Supreme Court has been away from the stricter view of the preceding years, where frequently contributory negligence was established as a matter of law, to the present situation in which such cases 'are rare.' (See *Anthony* v. *Hobbie, supra* [25 Cal.2d 814, 818 (155 P.2d 826)].)"

Counsel's other contention under this head is that the plaintiff, Carl Jansen, did not "take advantage of every

reasonable opportunity to look," as a matter of law, in that appellant "was driving his car from at least the south railroad right-of-way line to the crossing, a distance in excess of 55.4 feet, without looking to his right," and in support thereof relies upon *Scherer* v. *Southern Pac. Co.*, 140 Cal. App. 528 [35 P.2d 356]; *Reger* v. *Southern Pac. Co.*, 59 Cal. App. 313 [210 P. 971]. There is no factual similarity between the present case and those upon which appellant relies. In both the Scherer and Reger cases the accidents happened in broad daylight and each of the drivers knew a scheduled train was due. The Koster case was similar to those cases in that respect.

In the present case the accident occurred in the dark of night on a spur track used only for sporadic switching; the car was proceeding slowly across the 55.4 foot distance from the south edge of the right of way area to the near rail; the train did not have its head lamp lighted so as to warn of its approach through direct observation of the light or of its reflection on the roadbed of said tracks; nor was the train giving the sound warnings prescribed by statute. Respondents looked first to the left and then to the right after entering the right of way area, and as appellant states, the last look to the right was just prior to the impact. But Jansen's peripheral vision would have alerted him to the presence of the train if the headlamp of the engine had been lighted. He would also have been alerted to the darkened train's approach if it were making the proper sound signals. In the circumstances of this case we do not think the Scherer or Reger cases are controlling but rather that the question was properly presented to the jury for their determination.

For the above reasons we conclude appellant's two-fold specific contentions that respondents were guilty of contributory negligence as a matter of law are not well founded.

Appellant's remaining contention relates to an asserted error in the instructions given by the trial court. These contentions are that the court erred in (1) failing to instruct the jury that there was a special duty of care imposed upon the driver of a vehicle approaching a railroad crossing; (2) refusing to instruct the jury in particular language chosen by the defendant from the Koster case; (3) instructing the jury that the fireman on defendant's switch engine had a duty of care, not placed upon him by law, and (4) that the instruction given, predicated upon section 486 of the Civil

Code, was erroneous in that the jury was informed it was the duty of defendant to ring a bell at the intersection.

Since the first two contentions are but a re-argument of appellant's first main contention, suffice it to say that the jury was instructed in accordance with the views herein expressed relative to that contention; and hence what has heretofore been said in that regard is equally applicable here.

■ Appellant next argues that the court's instruction that "It was the duty of the fireman to exercise the same care that a reasonably prudent person in the same circumstances would in observing approaching automobiles and in warning the engineer of their presence," erroneously instructed the jury that the fireman had a duty, not placed upon him by law, to wit, "to warn the engineer that automobiles are *approaching* the crossing," and that such a duty is contrary to law relative thereto as laid down in *Billig* v. *Southern Pac. Co.*, 192 Cal. 357, 363 [219 P. 992].

Appellant further asserts that "the respondents make the same erroneous contention as to the subject matter under this heading as they do in all of the other points in their brief, that is, they contend that the reasonably prudent person rule is applicable, whereas the law lays down a specific standard of conduct." We cannot agree with this argument.

The jury was instructed that the fireman in acting as a lookout had the duty "to exercise the same care that a reasonably prudent person in the same circumstances would in observing approaching automobiles *and* in warning the engineer of their presence." (Emphasis added.)

The duty specified, as we read the instruction, was not "to warn the engineer that automobiles are *approaching* the crossing," but to *observe and* warn of approaching automobiles in the same manner as would a reasonably prudent person under the same circumstances. We find nothing in the Billig case to the contrary. The standard of conduct is always the same, that is, ordinary care under the circumstances. (*Cooper* v. *Southern Pac. Co.*, 43 Cal.App.2d 693, 703 [111 P.2d 689].) The Billig case is merely an exposition of what conduct on the part of the fireman would constitute reasonable care under the circumstances.

■ Appellant's final contention relates to an instruction given at the request of respondents relative to the duty of defendant under the provision of section 486 of the Civil Code. The court first instructed the jury in the precise

language of said section and then continued with the instruction which defendant now attacks, and which is as follows:

"You are instructed therefore that it was the duty of the defendants traversing the intersection of its tracks with 39th Street and for a distance of at least 1,320 feet before reaching 39th Street to ring a bell as required by the Statute, and if you find that the defendants failed to comply with said section 486 of the California Civil Code, just read to you, and that the failure to so comply was the proximate cause of the collision and of the plaintiffs' resulting damage, and that plaintiffs were not guilty of contributory negligence you must return a verdict for the plaintiffs."

However, that was not the only instruction on that subject; in fact there were two more which the court gave. The following instruction, which respondents state was given at the request of appellant, and which statement appellant has not denied, was as follows:

"I have stated to you heretofore that it was the duty of the defendants to give statutory signals, and I desire to instruct you further that the obligation to give satisfactory signals is necessarily controlled by our statutes and in cities the said statute provides 'that a bell of at least twenty pound weight must be placed on each locomotive engine and must be rung a distance of at least eighty rods from the place where the railroad crosses any street, road or highway, and be kept ringing until it has crossed the street, road or highway'; that in cities there is no statutory obligation for the defendants to sound any steam or other whistle as a warning of the engine's approach to such crossing. Of course, the railroad may, if it so desires, go beyond the terms of the statute and cause both the bell to be rung and the whistle to be sounded."

Immediately following that instruction was a third instruction by which the jury was told: "under the statute which deals with sounding of whistle or bell by a steam locomotive 'it is the sounding or giving of the' warning and not the hearing of it which determines the question of statutory violation. On this phase of the case, the only issue is whether a signal, as required by the statute, was sounded. If you find that a signal was sounded as required by the statute, the fact that it may not have been heard by some person, is not ground for finding that the statute was violated, or that the railroad or its employees were negligent."

As previously stated, appellant contends the court, by the first quoted instruction, erroneously instructed the jury, and such error was prejudicial. Whether the law is as appellant here contends or whether Civil Code, section 486, may be complied with by either ringing a bell *or* sounding a whistle we need not determine. Appellant, as appears from the instruction which it requested and which was given, believed the law to require it to ring a bell in cities at all events, but that if it chose it could also sound a whistle warning. Having received instructions in conformity with its view of the law it cannot now contend that such a statement of the law was erroneous and prejudicial to it. ■ It is well established that "A party cannot complain of an instruction given at his own request or of an error in an instruction given at the instance of his adversary when he requests a substantially similar one." (*Yolo Water & Power Co.* v. *Hudson,* 182 Cal. 48, 51 [186 P. 772].) See, also, *Cedzo* v. *Bergen,* 53 Cal. App.2d 667, 675 [128 P.2d 683]; *Benton* v. *Douglas,* 82 Cal. App.2d 784, 787 [187 P.2d 469]; *Blythe* v. *City & County of San Francisco,* 83 Cal.App.2d 125, 132 [188 P.2d 40].)

The judgment and orders are affirmed.

Adams, P. J., and Van Dyke, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 23, 1952. Edmonds, J., Schauer, J., and Spence, J., were of the opinion that the petition should be granted.