[L. A. No. 19876. In Bank. Apr. 28, 1947.]

SADIE STARTUP et al., Appellants, v. PACIFIC ELEC-
TRIC RAILWAY COMPANY (a Corporation), Re-
spondent.

Samuel P. Young and Paul Blackwood for Appellants.

Frank Karr, C. W. Cornell and O. O. Collins for Respondent.

GIBSON, C. J.—Plaintiffs were guests in an automobile which was struck by an interurban train operated by defendant. They have appealed from a judgment rendered after a verdict in favor of defendant claiming that the jury was erroneously instructed on the law applicable to their theory of the case.

The collision occurred at approximately 12:45 a. m. at an intersection of defendant's private right-of-way with a six-lane highway on which there was heavy traffic both day and night. There were four sets of tracks on the right-of-way; tracks one and two on the west carried southbound trains, and tracks three and four on the east were used for northbound trains. The automobile. was proceeding east on the highway and after it crossed tracks one and two, it was struck by a three-car northbound train on track three.

The defendant maintained a warning system with wig-wags at the southwest and northeast corners of the intersection. The switches which operated the wigwags were placed at varying distances from the highway crossing and the passage of a train on any one of the four sets of tracks would start and stop the warning device. On track three where the accident occurred, the last cutin switch was 576 feet south of the center of the intersection and the cutout switch was 39 feet north, with the result that if one train was following another on track three within 600 feet, the wigwag would stop operating as the first of the two trains passed the cutout switch, and would not again function while the following train, having already passed the cutin switch, approached the highway.

The evidence is sharply conflicting as to what occurred immediately prior to and at the time of the accident. Plaintiffs' evidence was as follows: The wigwag was operating as the automobile approached the intersection and the driver stopped at the crossing to let a southbound freight train pass on track one. As the freight train cleared the crossing and while the automobile remained standing, a single interurban car passed on one of the three tracks farthest from the automobile. The witnesses did not agree as to the track on which the single car was traveling. The driver of the automobile testified on direct examination that he believed the car was on track three, but that it could have been on track two. On cross-examination he testified that the car was traveling on track three or four. Plaintiff Startup placed the single car on track four, and one of the other plaintiffs testified that it was on track three or four. The wigwag ceased to operate when the single car cleared the intersection, and the driver of the automobile, without again looking north or south, started across the tracks. When the automobile reached track three, it was struck by a northbound three-car train which followed the single car. The train which collided with the automobile sounded no warning and the wigwag was not working as the train approached the intersection nor was it operating after the collision although the train had not passed the cutout switch.

Defendant's evidence was that the automobile did not stop, that neither a freight train nor a single car passed the crossing near the time of the accident, that the wigwag operated at all times and that the train which collided with the

automobile sounded appropriate warning signals as it approached the intersection.

It is clear that there was sufficient evidence to support a verdict for defendant, but plaintiffs contend that the evidence presented material questions of fact with regard to the installation, operation and maintenance of the signal system, and that the court erroneously took these questions from the jury by the following instruction:

"In this case there is no evidence upon which to support a finding that the defendant was negligent in respect to the installation, operation or maintenance of the wigwag signals installed at the crossing. You are therefore instructed that as to the issue of whether defendant was negligent in respect to the wigwags, you must find that the defendant was not negligent, even though you may believe from the evidence that the wigwags stopped operating after the freight train passed the crossing."

■ The defendant, having undertaken to warn travelers of the approach of its trains by the use of a wigwag, was under a duty to use reasonable care in the construction and maintenance of the signal system lest the appearance of safety created by the presence of the device constitute a trap for persons relying upon it for protection. (*Will* v. *Southern Pacific Co.*, 18 Cal.2d 468, 473-474 [116 P.2d 44]; *Erie R. Co.* v. *Stewart*, 40 F.2d 855, 857; *Mallett* v. *Southern Pacific Co.*, 20 Cal.App.2d 500, 506 [68 P.2d 281].)

■ The uncontradicted evidence establishes that the signaling system was so constructed that when one train followed another on track three within 600 feet the wigwag would cease to operate when the first train cleared the crossing, thereby indicating that traffic could cross the tracks in safety, notwithstanding the existence of imminent danger from the following train. Plaintiffs' evidence was that these were the circumstances under which the system was operating at the time of the accident. There was evidence that the wigwag was not working as the three-car train approached the intersection on track three, and that the single car which passed the intersection shortly ahead of the three-car train was also traveling on track three. It could be inferred that the wigwag stopped because the three-car train was following the single car on the same track and within the distance in which the wigwag would not operate. The defendant, however, asserts that the operating rules of the company provide

that one train shall not follow another at a distance of less than 2,500 feet, and that, if the train which struck the automobile was following so closely that the wigwag failed to give warning of its approach, this was the fault of the motorman and not of the signaling device. It is argued that the negligence of the company, if any, resulted from the failure of its employees to abide by the rules of the company, and that the instruction was therefore correct in stating that the defendant was not negligent in respect to the installation, maintenance or operation of the wigwag signals. This contention assumes that one of the purposes of the rule was to prevent the signaling device from operating as a trap. It follows from this assumption that compliance with the rule was an essential part of the operation of the system as a whole and, since it appears from plaintiffs' evidence that the rule was violated, it cannot be said as a matter of law that defendant was free from negligence in the operation of the signaling system.

 Nor can we say as a matter of law that the company was not negligent in the installation of a signaling system which depended upon compliance with such a rule to prevent it from operating as a trap. It appears that the placement of the cutin and cutout switches could have been adjusted so as to give warning of the approach of all trains, and this is a factor which the jury was entitled to consider in determining whether the company, having assumed the duty of warning travelers on the highway of the dangerous proximity of trains, used reasonable care in the installation and operation of its signaling system.

 Plaintiffs contend that the court also erred in giving the following instruction:

"The driver of the auto in which plaintiffs were riding testified that he started to cross defendants' tracks without looking for approaching trains, but relied wholly on the wigwag. You are instructed that the driver of the automobile was guilty of negligence as a matter of law, and if you find that such negligence on his part was the sole proximate cause of the accident, then your verdict must be for defendant."

As we have seen, the accident happened in the night time at an intersection which carried heavy traffic both day and night. The driver of the car stopped at the crossing in response to the warning given by the wigwag and waited while two trains passed and until the wigwag ceased operating. He started across the tracks without again looking only when,

in reliance on the cessation of the wigwag, it appeared to him that he could do so in safety.

█ It is settled that a railroad may not encourage persons traveling on highways to rely on safety devices and then hold them to the same degree of care as if the devices were not present. (*Will* v. *Southern Pacific Co.*, 18 Cal.2d 468, 474 [116 P.2d 44]; *Toschi* v. *Christian*, 24 Cal.2d 354, 360 [149 2d 848]; *Koch* v. *Southern California Ry. Co.*, 148 Cal. 677, 680 [84 P. 176, 113 Am.St.Rep. 332, 7 Ann.Cas. 795, 4 L.R.A.N.S. 521].) █ The railroad tracks are, of course, themselves a warning of danger and a driver of an automobile must take some precautions for his safety when attempting to cross them, even though the railroad has installed some system to warn of approaching trains. (*Will* v. *Southern Pacific Co.*, supra; *Toschi* v. *Christian*, supra, at p. 360, et seq.) It is ordinarily a question for the jury whether the precautions taken by the driver of the automobile are sufficient in view of all of the circumstances. (*Toschi* v. *Christian*, supra, at p. 360; *Koch* v. *Southern California Ry. Co.*, supra, at p. 680; *Will* v. *Southern Pacific Co.*, supra, at p. 475.) And it has been held that even where the crossing is unguarded and the driver failed to look that "In determining the degree of care which should be expected from a reasonably cautious person in crossing the railroad track . . . the jury might consider the fact that a freight train had just passed and that one would not ordinarily expect another train so soon." (*Pietrofitta* v. *Southern Pac. Co.*, 107 Cal.App. 575, 580 [290 P. 597]. See, also, *Lindsey* v. *Pacific Elec. Ry. Co.*, 111 Cal.App. 482, 488, et seq. [296 P. 131].)

█ There was evidence that the driver of the automobile in which plaintiffs were riding took some precautions before crossing the tracks, and "where it is shown that a [driver] has exercised some care, the question whether or not the care actually exercised was due and sufficient will always be a matter for determination by the jury." (*Koch* v. *Southern California Ry. Co.*, 148 Cal. 677, 680 [84 P. 176, 113 Am. St.Rep. 332, 7 Ann.Cas. 795, 4 L.R.A.N.S. 521].) It was therefore error for the court to instruct the jury that the driver of the automobile was guilty of negligence as a matter of law.

The judgment is reversed.

Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

TRAYNOR, J.—I concur in the judgment.

I agree with the main opinion regarding the instruction concerning the installation, operation, and maintenance of the wigwag signals. I cannot agree, however, as to the negligence of the driver of the automobile. The driver stopped at the crossing in response to the warning given by the wigwag and waited until two trains passed and the wigwag ceased operating. The crucial question is whether it was negligence thereafter to cross the tracks without looking for approaching trains. A jury is in no better position than this court to answer this question. There is every reason why this issue, often raised in practice, should be settled by this court and not left to the oscillating verdicts of juries. (See Holmes, The Common Law, 123.) The court therefore should determine the standard of reasonable conduct for deciding whether or not the conduct in question was negligent. (See concurring opinion in *Toschi* v. *Christian*, 24 Cal.2d 354, 364 [149 P.2d 848]; concurring opinion in *Satterlee* v. *Orange Glenn School District*, *ante*, pp. 581, 593 [177 P.2d 279].) In my opinion the invitation to cross implicit in the cessation of the wigwag and the absence of other factors that might serve to warn of danger relieved the driver of the duty to look for approaching trains. He therefore complied with the requirements of due care when he stopped and waited for the cessation of the wigwag before proceeding to cross the tracks. Such a driver is in a different position from a driver who finds the wigwag silent or in a stationary condition when he approaches the tracks and crosses them without looking for approaching trains. The former is assured by the operation of the wigwag that it is functioning and will warn of approaching trains, whereas the latter, having no such assurance, must anticipate the possibility that the wigwag is not functioning. (See *Will* v. *Southern Pacific Co.*, 18 Cal.2d 468, 474-475 [116 P.2d 44]; 53 A.L.R. 975; 99 A.L.R. 732.)

Moreover, the instruction with respect to the driver's negligence was unnecessary and misleading. The plaintiffs were the guests of the driver and his negligence was not imputable to them. (*Campagna* v. *Market St. Ry. Co.*, 24 Cal. 2d 304, 309 [149 P.2d 281]; *Pope* v. *Halpern*, 193 Cal. 168, 174 [223 P. 470]; *Bryant* v. *Pacific Elec. Ry. Co.*, 174 Cal. 737 [164 P. 385]; see Restatement, Torts, § 490.) "The ultimate question for the determination of the jury was whether defendants were guilty of negligence contributing to plain-

tiffs' injuries. The conduct of the driver of the automobile, not being in issue, was admissible in evidence only to the extent that it might aid in the determination of the question of the negligence of defendants.'' (*Krupp* v. *Los Angeles Ry. Corp.*, 57 Cal.App.2d 695, 698 [135 P.2d 424].) The vice of such an instruction is that it tends to lead the jury to believe that their verdict depends on the negligence of the driver. (See *Krupp* v. *Los Angeles Ry. Corp., supra; Renowden* v. *Pacific Electric Ry. Co.*, 73 Cal.App. 383, 387 [238 P. 785] ; *Lund* v. *Pacific Electric Ry. Co.*, 25 Cal.2d 287. 293-294 [153 P.2d 705].)

Respondent's petition for a rehearing was denied May 26, 1947.