[Civ. No. 7468. Third Dist. Apr. 2, 1949.]

SALVATORE EMMOLO, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Appellants.

Coombs & Dunlap and David Dunlap for Appellants.

Palmer & York and Francis H. Frisch for Respondent.

PEEK, J.—This is an appeal by defendants from a judgment in favor of the plaintiff in an action to recover damages for injuries sustained by him as the result of a collision between plaintiff's truck and defendants' train. Defendants' answer denied plaintiff's allegations of negligence and affirmatively alleged that he was guilty of contributory negligence. There were two trials. The first jury was unable to agree and was discharged. The second returned a verdict for plaintiff. Defendants' motion for a new trial was denied and the judgment which was entered pursuant to the verdict forms the basis of the present appeal.

Two issues are presented by appellants, (1) that plaintiff was guilty of contributory negligence as a matter of law and (2) that the provisions of section 486 of the Civil Code relative to the sounding of warning devices do not apply to the crossing here involved, and therefore the trial court

erred in instructing the jury that the failure of defendants to give any warning signal constituted negligence on their part. Our examination of the record leads to the conclusion that neither contention can be sustained and that the verdict and judgment should be affirmed.

A summary of the evidence disclosed by the record shows that immediately prior to the accident plaintiff was driving a 1½-ton truck to a farm leased by him and located approximately 6 miles north of the city of Napa. The truck, which was comparatively new and in good mechanical condition was loaded with farm equipment as was the trailer attached to it. The overall length of the truck and trailer was approximately 49 feet. Access to the farm is by a lane, which also serves an adjacent farm and runs at a right angle from a state highway which parallels a branch line of the defendants' tracks. To reach the farm it was necessary to cross a rather narrow bridge before crossing defendants' tracks, which tracks are about 50 feet westerly of the highway. No gates or other obstruction were maintained at any point between the highway and the farms. There was no warning device or sign at the crossing. However the defendants did maintain one of the customary signs at rural crossings advising that permission to pass over the right of way was revocable at any time. The road or lane was open at all times. Apparently because of the length of the equipment and the width of the lane and bridge, plaintiff, in order to turn from the highway into the lane, was compelled to make a wide sweeping turn necessitating the use of the entire width of the highway in so doing. Immediately before commencing his turn he stopped approximately 50 feet north of the entrance to the lane to allow an employee to alight from the truck to control traffic while plaintiff maneuvered the equipment. As he waited for the employee to take a position on the highway, plaintiff looked northwesterly through the right front door window and rear window of the truck. His vision, according to his testimony, was obscured to "some" extent by trees and brush along defendants' right of way, approximately 250 to 300 feet from where his truck was stopped. How far he could see past the obstruction does not appear, although the record does disclose that the tracks are straight for a considerable distance, both north and south of the crossing. Neither seeing nor hearing a train he proceeded into the lane and across the bridge. The width of the bridge

allowed only about 1½-foot clearance on either side of the truck. Because of this fact and the length of his equipment his attention was apparently taken up with the operation of the truck in aligning it on the lane. He did not look again until the truck and trailer were almost wholly on the lane. At that time he was approximately 15 feet from defendants' tracks. Upon seeing the train he immediately applied his brakes but he was unable to stop in time to avoid the collision. The testimony of plaintiff as well as of other witnesses was that from the time he entered the lane until he endeavored to stop, his truck was proceeding at a slow rate of speed.

In support of their first contention, which is primarily predicated upon the so-called stop, look and listen rule as enunciated in cases such as *Koster* v. *Southern Pacific Co.,* 207 Cal. 753 [279 P. 788], defendants argue that at no time did plaintiff have a "reasonably assuring view of the track," that his first look was in effect no look at all since it was too soon considering the speed of the truck, the speed of the train and the distance which plaintiff had to travel from that point to the point where the collision occurred; that plaintiff's second look likewise amounted to no look for the reason that admittedly he was unable to stop his equipment in time to avoid the collision, and that therefore he was guilty of contributory negligence as a matter of law.

In the case of *Pietrofitta* v. *Southern Pacific Co.,* 107 Cal. App. 575 [290 P. 597] (hearing in Supreme Court denied), this court was presented with a very similar factual situation, and like contentions were made; that is, the accident occurred at a rural crossing; the driver's view was obstructed; the road was not good, causing him to give more than ordinary attention to his driving, and that no warning was given as required by section 486 of the Civil Code.

The conclusion reached in that case appears to be equally applicable here; that (p. 581) "It is true that one must be vigilant in crossing a railway track, which is itself a warning of danger and that the duty to exercise care in doing so is not fulfilled by carelessly glancing up the track and then blindly proceeding to cross in the face of danger. But the test of vigilance under particular circumstances will be determined by what a reasonably cautious person would do under similar circumstances."

In a recent case involving the question of the contributory negligence of a motorist at a railroad crossing the Supreme Court stated that ". . . the actor's conduct must always be

gauged in relation to all the other material circumstances surrounding it and if such other circumstances admit of a reasonable doubt as to whether such questioned conduct falls within or without the bounds of ordinary care then such doubt must be resolved as a matter of fact rather than of law. . . .'' (*Toschi* v. *Christian,* 24 Cal.2d 354, 360 [149 P.2d 848].) While the Toschi case is not entirely analogous since it involved a crossing protected by flagmen, nevertheless such a difference is only one of the ''material circumstances'' by which the ''actor's conduct must always be gauged'' and cannot serve to change the question herein involved from one of fact to one of law. In this regard the following language appearing in the Toschi case, *supra,* at page 360 is apropos:

''Standards of care are typically relative; rules of law are basically absolute. Hence, in regard to negligence, any attempt to screen factual conduct into legal classifications through a sieve of absolute law will be impracticable whenever the related circumstances admit of materially conflicting inferences.''

Appellants' contention that plaintiff did not obtain, as they stated, a ''reasonably assuring view'' of the tracks, is but to argue the weight of the evidence. Furthermore there is testimony to sustain the implied finding of the jury that plaintiff did obtain a view, which to a reasonably prudent man would give reasonable assurance of his safety. Therefore applying the rule as enunciated in the Pietrofitta and Toschi cases, *supra,* to the facts and circumstances of the present case, we can no more say that plaintiff herein was guilty of contributory negligence as a matter of law than we could in the earlier Pietrofitta case. ■ The plaintiff Emmolo did stop, he did look, and he did listen. Whether or not his choice of view was that of a reasonably prudent man, exercising reasonable precautions for his own safety, was a question properly left to the jury. (*Nelson* v. *Southern Pacific Co.,* 8 Cal.2d 648, 652 [67 P.2d 682]; *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427 [45 P.2d 183].) Equally applicable to the above question are the views expressed in *Music* v. *Southern Pacific Co., post,* p. 93 [204 P.2d 422], filed this day.

■ Defendants' argument in support of their second contention is that section 486 of the Civil Code applies only to public roads and not private roads such as the one involved in the present case which admittedly only went to the two farms previously mentioned. The pertinent portion of said section

provides for the sounding under specified conditions of certain named warning devices for "a distance of at least eighty rods from the place where the railroad crosses *any street, road or highway* . . . ." (Italics ours.) Neither party has cited nor has our own research disclosed any case passing upon the precise contention made. However, a reasonable construction of a statute is to be preferred and effect is to be given to all of its parts, including all the words therein contained which are to be interpreted according to their common acceptation. (Civ. Code, § 3542; 23 Cal.Jur. 722, 749, 758.) Turning to the statute, particularly the above underscored portion thereof, we find that it applies to "any" street, road, or highway. The word "any" is defined in part as "Indicating a person, thing, etc., as one selected without restriction or limitation of choice, with the implication that every one is open to selection without exception; one, no matter what one; all, taken distributively; every; . . . ." (Webster's Internat. Dict.) Thus the use of the word "any" in the statute negatives the contention that the statute is restricted to public roads. Such an interpretation is consistent with the few cases that bear on the question. (See *Orcutt* v. *Pacific Coast Ry. Co.*, 85 Cal. 291 [24 P. 661]; *Vance* v. *Atchison etc. Ry. Co.*, 9 Cal.App. 20 [98 P. 41]; *Gregoriev* v. *Northwestern Pacific R. R. Co.*, 95 Cal.App. 428 [273 P. 76].)

The judgment and the order denying defendants' motion for judgment notwithstanding the verdict, are both affirmed.

Adams, P. J., and Thompson, J., concurred.