**SOUTHERN PACIFIC CO. v. SOUZA et al.**

**No. 12153.**

United States Court of Appeals
Ninth Circuit.

Jan. 30, 1950.

Arthur B. Dunne, Dunne & Dunne, San Francisco, Cal., for appellant.

Clifton Hildebrand, James A. Myers, D. W. Brobst, Oakland, Cal., for appellees.

Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

The Southern Pacific Company appeals from three judgments rendered against it by the district court. The three causes of action grew out of a crossing collision between a railroad locomotive and an automobile. The separate actions were consolidated for trial. In these actions the plaintiffs were John Souza, the driver of the automobile; the survivors of Antonio Souza and of Edward Souza, both of whom were passengers in the automobile and were killed as the result of the collision. Federal jurisdiction rests on diversity of citizenship.

Appellant's principal contention is that the driver of the automobile, appellee John Souza, was contributorily negligent as a matter law. The evidence concerning the circumstances of the accident was highly contradictory. Much of the testimony given in behalf of appellees was impeached by alleged prior inconsistent statements of the witnesses. However, the credibility of witnesses is for the determination of the jury. Accepting the testimony and the inferences therefrom in the light most favorable to appellees and disregarding contradictory testimony, the jury could have found that the facts were somewhat as follows:

Appellee, John Souza, on October 11, 1945, at about 9:00 a.m. was driving his 1941 Ford Coupe along Beckwith Road about two miles north of Modesto, California. Passengers were his father, Antonio, and his brother, Edward. As John approached the crossing of the Southern Pacific main line (single) track he began to slow down until at 60 feet from the track his speed was approximately 15 miles per hour. At about 20 feet from the track he came to a complete stop. Beckwith Road intersects the track at an angle of 45 degrees so that the automobile and its occupants were halfway facing down the track to the right or southeast. Appellee was familiar with the crossing having traversed it many times. The day was sunny and there were no physical objects to obstruct a clear view down the straight track in either direction, but there was a shallow layer of light haze or mist hovering above the ground at a height of from 5 to 15 feet which impaired horizontal visibility so that John could see down the track a distance of only about 600 feet. His ability to distinguish objects at that distance when looking down the track to the right may have been lessened by the effect of the sun's rays which shone upon the windshield of the automobile.

After stopping appellee looked to the right for approximately two seconds and then to the left for about the same time. Having seen or heard no train in either direction, he shifted into low and started across the track without looking again to

the right. While the car was astraddle the track he glanced to the right and saw a locomotive bearing down on him from that direction but was unable to clear the track in time to avoid the collision which killed his father and brother, injured him, and demolished his car.

The locomotive was traveling "light" at a speed of 65 or 70 miles per hour. Its front was painted silver for higher visibility but this coloration might have had a reverse effect because of the haze or mist. Neither whistle nor bell were sounded to signal the approach to the crossing. At the speed the train was traveling it would take approximately six seconds to traverse the 600 foot range of visibility.

So much for what the jury might have concluded.

Appellant argues that the California courts have established definite standards of care for highway travelers at railroad crossings and that appellee's own testimony shows that he failed to measure up to those standards and was therefore contributorily negligent as a matter of law. Many of the earlier California decisions cited by appellant would seem to sustain this argument. [1] However, the more recent decisions of the courts of California, although they have not expressly overruled the old cases, show a definite policy trend away from the "crystallized fact" cases and favor making the standard of care a question for the determination of the jury. [2] Several California decisions have held on similar fact situations that whether or not the driver's choice of a place to look and his failure to look a second time consituted negligence were questions of fact for the jury. [3]

1. Chrissinger v. Southern Pacific Co., 169 Cal. 619, 149 P. 175, "When established circumstances show that he must have seen had he looked, his testimony that he looked but did not see will not be sufficient to support a verdict. * * * Persons crossing a track must take advantage of every reasonable opportunity to look and listen." To the same effect see Griswold v. Pacific Electric R. Co., 45 Cal.App. 81, 187 P. 65; Hamlin v. Pacific Electric R. Co., 150 Cal. 776, 778, 89 P. 1109.

2. See the oft cited statements in Crawford v. Southern Pacific Co., 3 Cal.2d 427, 429, 45 P.2d 183, 184, "In reviewing the evidence on such an appeal, all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. * * * To establish the defense of contributory negligence as against the verdict of a jury ,the evidence must be such that the appellate court can say that there is no substantial conflict on the facts, and that from the facts reasonable men can draw but one inference, which inference points unerringly to the negligence of the plaintiff proximately contributing to his own injury."

And in Peri v. Los Angeles Junction R. Co., 22 Cal.2d 111, 137 P.2d 441, 446, the court said, "Too frequently appellate courts have ignored those fundamental principles when dealing with railroad crossing accidents, and have arbitrarily substituted their conclusions of law as to the care a man of ordinary prudence would exercise under the circumstances presented to the trier of facts."

3. In Walker v. Southern Pacific Co., 38 Cal.App. 377, 176 P. 175, the driver stopped 75 feet from the track where he had an unobstructed view down the track of 800 to 1000 feet. He then proceeded up the road and did not look again until it was too late.

In Pietrofitta v. Southern Pacific Co., 107 Cal.App. 575, 290 P. 597, the driver, who was well acquainted with the crossing, stopped and looked some 30 to 40 feet back and then proceeded slowly up the rough road to meet his destiny, the second section of a train which had passed a few minutes before. He too did not look again.

In Nelson v. Southern Pacific Co., 8 Cal.2d 648, 67 P.2d 682, the driver stopped within a few feet of a 5 track crossing, looked down to her right where she had a clear view for a quarter of a mile, saw nothing, looked to the left where she saw a freight on track one

The cases cited in footnote 3 might possibly be distinguished on the ground that in each of those cases there was something (a bad road or a train on the left) to divert the driver's attention and excuse his failure to look again in the direction from which the train came. However, in the instant case the close proximity in time and space between the "look" and the collision seems to leave no room for such a distinction. We are of the opinion that the California cases require an affirmance as against the defense of contributory negligence. That being so we need not consider the contention that the trial court erred in refusing to submit to the jury the question of joint venture for the purpose of imputing the driver's alleged negligence to his brother.

Appellant's remaining contentions concern the instructions. It is urged that the trial court erred in instructing the jury to the effect that a driver who is himself exercising reasonable care has a right to anticipate ordinary care and caution on the part of the train crew. Many cases are cited to support the proposition that such a charge is not the law of California with respect to railroad crossings. We think that whatever error or ambiguity there might have been in the instruction was fully cured by the one which followed.[4] It is elementary that instructions must be considered as a whole. Even if a single instruction is erroneous, it does not call for reversal if it is cured by a subsequent charge or by a consideration of the entire charge, Clarke v. United States, 9 Cir., 132 F.2d 538, certiorari denied 318 U.S. 789, 63 S.Ct. 992, 87 L.Ed. 1155.

Appellant also argues that it was error for the trial court to refuse to give its proposed instruction to the effect that the train crew had the right to presume that the driver would exercise due care. We think that other instructions concerning the rights and duties of the railroad sufficiently and fairly explained the railroad's required standard of care. Furthermore, the proposed instruction was defective for it failed to state that before the members of the crew could rely on this presumption they must themselves be exercising reasonable care. The instruc-

which she waited for and then saw a locomotive on track two. She then proceeded across the track giving all of her attention to the locomotive to her left without again looking to the right. She heard whistles but attributed them to the locomotive on the left. The train which struck her came from the right. The court declared that it would reject close calculations (based on mere estimates of time and speed) designed to show that the driver must have been negligent.

In Music v. Southern Pacific Co., 91 Cal.App.2d 93, 204 P.2d 422, the driver stopped and looked at a point where he could only see 150 feet down the track and then gave his attention to driving across the rough crossing.

In Emmolo v. Southern Pacific Co., 91 Cal.App.2d 87, 204 P.2d 427, 429, the driver of a large truck and trailer stopped at a distance of fifty feet from the track. His view at that point was obstructed to some extent. He proceeded slowly up a narrow lane and across a narrow bridge and did not look again until it was too late to avoid the collision. Held: "The plaintiff Emmolo did stop, he did look, and he did listen. Whether or not his choice of view was that of a reasonably prudent man, exercising reasonable precautions for his own safety, was a question properly left to the jury."

4. In the succeeding instruction the jury was told that any want of care on the part of John Souza "is not excused by any assumption he might make that the operators of a locomotive which might be approaching would not be negligent, or that any locomotive which might be approaching would be operated in any particular way, whether as to speed or signals or otherwise. He was required to exercise reasonable care at all times, and to do so independently of the manner of the operation of the locomotive or the giving of signals, or warnings, or the failure to do so, if there were such a failure. Any assumption which he might make as to the manner of operation of the railroad or any locomotive on the railroad could not excuse negligence on his part, if any there were. Even if no signals were heard, and indeed, if none was given, that would not excuse his negligence, if he was guilty of any."

tion, as worded, might well have been interpreted by the jury to excuse a failure to ring the bell or sound the whistle.

█ We are of the opinion that the instructions as a whole were fair and complete and covered all the essential points of law. "Once the judge has made an accurate and correct charge, the extent of its amplification must rest largely in his discretion." United States v. Bayer, 331 U.S. 532, 536, 67 S.Ct. 1394, 1396, 91 L. Ed. 1654.

The judgments are affirmed.