[Civ. No. 4463. Fourth Dist. Jan. 15, 1953.]

ELIZABETH. C. DaVALL, Appellant, v. LILLIE PEARL CARY, Respondent.

Alva D. McGuire and William W. Shaw for Appellant.

H. Thomas Ellerby and Henry F. Walker for Respondent.

BARNARD, P. J.—The appellant was injured on February 18, 1950, while riding in an automobile owned and driven by the respondent. She alleged in her complaint that she was a passenger in this car, having been requested by the respondent to assist her in closing a sale of real estate. She also alleged that her injury was proximately caused by the concurrent negligence of the respondent and another defendant, Robert Logue. Respondent's answer denied these allegations, and alleged that appellant was riding as a guest in this car. A jury returned a verdict in favor of both defendants, a motion for a new trial was denied, and this appeal was taken from that part of the judgment which is in favor of this respondent. The appellant contends that the evidence is not sufficient to support the judgment; that respondent's negligence conclusively appears; and that it conclusively appears that the appellant was a passenger and not a guest.

These parties were elderly ladies and had been friends for many years. The appellant operated a real estate office and the respondent had a license as a salesman in connection therewith, but was not active and had never made a sale. On this occasion they left Riverside at about 8 a.m. on their way to Huntington Beach, where the respondent was going to sign some escrow papers in the sale of a parcel of real estate which she owned. The accident happened about 8:30 a.m. as they were proceeding westerly through the Santa Ana Canyon. It was foggy, and all cars on the road were proceeding slowly and with lights on. At the point of the accident the road was 21 feet wide with a white line along the middle, there was a 6-foot shoulder at the north, a 9-foot "paved" shoulder at the south, and beyond that an 18-foot dirt shoulder. The respondent came up behind a truck and trailer and turned to her left to pass it, straddling the white line. As she did this, she saw the lights of about seven cars approaching from the opposite direction. Some of these cars passed to her left but one, operated by the defendant Logue, suddenly pulled out of the line of approaching traffic and came toward her, striking her car near the left rear fender. Her car zigzagged, hit the front of the truck ahead of her, went through a guardrail and down an embankment. A little later, other transportation was secured and both ladies went on to Huntington Beach where the respondent signed her escrow papers at a bank before it closed about noon.

The evidence is conflicting with respect to negligence on the part of the respondent. While an officer, who arrived

some half hour later, testified that the visibility was then approximately 100 feet, there was evidence that the visibility at the time of the accident was from 200 to 300 feet. There was evidence that the respondent saw the lights of the approaching vehicles "but they seemed far away. I thought I had plenty of time to get around the truck." The question of negligence under such circumstances is one of fact. (*Spendlove* v. *Pacific Elec. Ry. Co.*, 30 Cal.2d 632 [184 P.2d 873]; *Watkins* v. *Nutting*, 17 Cal.2d 490 [110 P.2d 384].) There was also evidence that another truck, coming easterly, had just drawn off onto the shoulder at the south side of the road for the purpose of letting the line of cars behind it pass, that some of those cars had passed that truck without interfering with the respondent, and that the car driven by Logue suddenly pulled out of the line in front of the respondent. In view of this and other evidence, the question of negligence and proximate cause was clearly one of fact for determination by the jury. (*Williams* v. *Kawanami*, 53 Cal.App.2d 14 [127 P.2d 58, 996].)

The question of passenger or guest was also one of fact and it cannot be held, as a matter of law, that the appellant was not a guest. She testified that she knew that the respondent was trying to sell this property at Huntington Beach; that in January, 1950, the respondent told her that respondent's brother had spoiled a previous sale of the property and she would not have her relatives help her with an escrow again; that respondent then asked her to go to Huntington Beach with her and advise her about listing the property; that she went in January, 1950, and gave this advice, and was introduced to Mr. and Mrs. Furr, real estate brokers; that on one trip in January she looked up the taxes and found some were delinquent, which the respondent paid; that respondent then listed the property with Mr. and Mrs. Furr; that on February 17, 1950, the respondent showed her a letter from the Furrs asking the respondent to come and enter into the escrow; that respondent told her she wanted her to go with her as she wanted to be sure the sale would go through this time; that she agreed to do this; that the respondent promised to pay her $50 for this service; that she closed her office and went with the respondent; that after the escrow papers were prepared she went over them with the respondent advising her as to their meaning and effect; and that sometime after the accident the respondent paid her $5.00 and promised to pay the rest of the $50 later.

The respondent testified that she and the appellant were friends and frequently went places together; that she did not ask the appellant to go with her on this occasion, but the appellant requested permission to make the trip; that the appellant went ''just to be going along,'' and had nothing to do with the escrow matter; that she did not promise to pay the appellant anything for going with her; and that she did not pay her any money at any time. Respondent's brother testified that in June, 1949, he and the respondent went to the courthouse in Santa Ana, found the taxes in question were delinquent, and the respondent paid them. A receipt and title insurance policy showing that these taxes were paid in June, 1949, were introduced in evidence. The Furrs testified that the respondent listed the property with them in September, 1949; that they telephoned to the respondent on February 17, asking her to come down and close the deal; that no letter was written to her; and that they never had met the appellant until the day of the accident, February 18. There is also evidence contradicting appellant's testimony as to what occurred at the bank when the escrow papers were signed, and evidence that on the day after the accident the appellant, in talking to respondent's brother about the escrow, told him ''I didn't have anything to do with it.''

Nothing more than a conflict in the evidence appears, and the appellant's testimony was discredited in several particulars. The jury's finding on the factual questions presented cannot be disturbed. (*Whitechat* v. *Guyette,* 19 Cal.2d 428 [122 P.2d 47].)

The portion of the judgment appealed from is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied February 6, 1953, and appellant's petition for a hearing by the Supreme Court was denied March 12, 1953.